In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 05-4613

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

CALVIN BIGGS,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 CR 316—**Suzanne B. Conlon**, *Judge*.

_____

ARGUED MARCH 27, 2007—DECIDED JUNE 14, 2007

_____

Before MANION, KANNE, and WOOD, *Circuit Judges.*

MANION, *Circuit Judge.* A jury convicted Calvin Biggs of possession with intent to distribute crack cocaine and possession of a firearm as a convicted felon. The district court sentenced Biggs to 360 months of imprisonment. Biggs appeals, claiming that the drugs and guns at issue should have been suppressed because he was arrested without probable cause and because his subsequent consent to search was involuntary. He also challenges the jury's viewing of an exhibit during deliberations and the reasonableness of his sentence. We affirm Biggs's convictions and sentence.

**I.**

On the night of April 13, 2004, officers from the Chicago Police Department arrested Calvin Biggs. The parties present conflicting versions of what happened that night. We begin with the government's version, which a magistrate judge found to be credible and which the district court adopted. According to Officer Patrick Thelan, who testified at an evidentiary hearing, an anonymous source informed him that a heavyset black man in a cream-colored sweater was selling drugs at a particular intersection. Within twenty minutes of receiving this information, Officer Thelan and his partner Sergeant Michael Stack drove by the intersection in an unmarked police vehicle and observed a man on the corner fitting the description provided by the tipster. The officers drove around the block to a vacant lot from where they could observe the man without being seen. From a distance of approximately fifty to seventy-five feet, both officers watched with binoculars. Over the course of about fifteen minutes, the man received currency from three different individuals and handed each something from the rear of his pants. The officers left their vantage point after the third suspected drug transaction, returned to their vehicle, drove back around the block, and parked the vehicle to approach Biggs. Biggs fled when he saw the officers approach. The officers pursued him into a nearby basement apartment. As Biggs entered the apartment, the officers saw him remove a plastic bag from his pants and throw it to the floor. Sergeant Stack recovered the bag, which subsequent testing revealed contained 2.3 grams of crack cocaine, and placed Biggs under arrest.

The officers escorted Biggs to their vehicle and alerted him to his rights under *Miranda v. Arizona*, 384 U.S. 436

(1966). Biggs then told the officers that he could not go back to jail because he had to take care of his daughter. Biggs offered to get the officers some guns in exchange for his release. The officers responded to Biggs's offer with questions about the guns, asking their type and location and whether any dogs were at the location. The officers never told Biggs that they would release him in exchange for the guns; instead, they continued to ask questions. They drove Biggs to a parking lot of an abandoned candy factory, where at least two other officers were present. Approximately twenty-five minutes after the officers took Biggs into custody, he signed a consent to search form for the first floor of 4844 W. Huron, the place where Biggs said the guns were stored. Another officer arrived to transport Biggs to jail for booking. Biggs informed that officer of his belief that he should be released because he gave up some guns, but that officer simply confirmed that the guns were Biggs's own weapons. Officer Thelan and the other officers then drove about two miles to the residence, where they recovered two guns and a bag containing what testing later determined to be 110.3 grams of crack cocaine.

Biggs's account of the evening's events differs substantially. He testified, along with three other witnesses, to the following version. Two women from the neighborhood were walking around the block and talking that night. They saw Biggs enter a basement apartment. Biggs had gone to the apartment to visit a sick friend, Arthur Weems, who subsequently died. Another man, Emrick Burks, was also present inside the apartment. The women were still on the block a little while later when an officer approached them and ordered them to empty their pockets and shake out their bras. While this encounter trans-

pired, Biggs exited the basement apartment. The officer then shifted his focus away from the women and went to the basement apartment. The officer met Biggs at the door as he was leaving and pushed him back into the apartment. The officer's partner then ran by the women, asked where his partner went, and was directed to the basement apartment, which he also entered.

Biggs and Burks then testified that the officers ordered them and Weems to the ground, handcuffed them, and searched the apartment. Six other officers entered the apartment during the search, but four of them left after learning that the situation was under control. The search turned up the 2.3 grams of crack cocaine. The officers then escorted Biggs to their vehicle and told Biggs that this amount of drugs was negligible, and allegedly promised to make the drugs disappear if Biggs would provide them with a gun. The officers drove Biggs to the abandoned candy factory parking lot where Biggs negotiated with the four officers for approximately fifteen minutes. The officers allegedly threatened to get a search warrant for the residence and arrest everyone in the house, including his mother and girlfriend, if Biggs did not consent to the search. Biggs then signed the consent to search form without reading it. Much to his surprise, he was not released, but was instead taken to jail.

A grand jury indicted Biggs for possession with intent to distribute crack cocaine and possession of two firearms as a convicted felon. *See* 21 U.S.C. § 841(a)(1); 18 U.S.C. § 922(g)(1). Biggs moved to suppress the evidence of the guns and drugs and to quash his arrest. He based his claim on a lack of probable cause and on an involuntary consent to search. After an evidentiary hearing, a magistrate judge found that Biggs's version of events lacked

credibility and denied the motions in a written recom-
mendation that the district court accepted and adopted.
Biggs proceeded to trial. During deliberations, the jury
requested to view the 2.3 grams of cocaine that had been
found at the apartment. Biggs objected to the viewing. The
court overruled the objection and returned the jury to the
jury box. There she permitted the jurors to examine the
drugs by having the exhibit passed among the jurors. The
jury subsequently convicted Biggs on both counts and the
district court sentenced him to 360 months of imprison-
ment. Biggs appeals both his convictions and sentence.

## II.

On appeal, Biggs first argues that the officers lacked
probable cause or reasonable suspicion for the initial
confrontation and arrest at the apartment. Based on that,
he claims the district court should have suppressed the
evidence gleaned from this encounter. In considering
whether evidence should be suppressed, we review the
district court's legal conclusions de novo and factual
findings for clear error. *United States v. Breland*, 356 F.3d
787, 791 (7th Cir. 2004) (citation omitted). To determine if
the circumstances warrant suppression, we must ex-
amine the validity of the arrest. To arrest Biggs without
a warrant, the officers " 'must have probable cause, under
the totality of the circumstances, to reasonably believe
that a particular individual has committed a crime.' "
*United States v. Oliva*, 385 F.3d 1111, 1114 (7th Cir. 2004)
(quoting *United States v. Gilbert*, 45 F.3d 1163, 1166 (7th Cir.
1995)). "In order to have probable cause for an arrest,
law enforcement agents must reasonably believe, in light
of the facts and circumstances within their knowledge at
the time of the arrest, that the suspect had committed

or was committing an offense." *Payne v. Pauley*, 337 F.3d 767, 776 (7th Cir. 2003) (citation omitted).

The magistrate judge, in findings that were accepted and adopted by the district court over Biggs's objections, found Officer Thelan's testimony credible. According to Officer Thelan's version of events, the officers received an anonymous tip describing a man who was selling drugs at a particular intersection. The officers corroborated this tip when they saw a man matching the informant's description engage in three suspected drug transactions. When the officers approached him he fled to a nearby apartment dwelling. They caught him and arrested him. Under this scenario, the officers had probable cause for the arrest. *See United States v. Schaafsma*, 318 F.3d 718, 722 (7th Cir. 2003) (finding that a statement implicating the defendant, his presence at a crime scene, and his flight is sufficient for probable cause).

Biggs responds that crediting Thelan's testimony was clear error. We generally defer to the district court's determination of credibility because, unlike our review of transcripts, the district court "had the opportunity to listen to testimony and observe the demeanor of witnesses at the suppression hearing." *United States v. Parker*, 469 F.3d 1074, 1077 (7th Cir. 2006) (citation omitted). Since the district court adopted the credibility determinations of the magistrate judge, we review the magistrate judge's findings for clear error. *United States v. Gillaum*, 372 F.3d 848, 854 (7th Cir. 2004) ("This deference is equally applicable where credibility determinations have been made by a magistrate judge and the report and recommendation of the magistrate judge have been adopted by the district court."). Although we review for clear error, determinations of witness credibility " 'can virtually never be clear

error.' " *United States v. Ortiz*, 431 F.3d 1035, 1039 (7th Cir. 2005) (quoting *United States v. Blalock*, 321 F.3d 686, 690 (7th Cir. 2003) (internal quotation marks and citation omitted)).[1]

Biggs argues that because Officer Thelan's testimony is improbable, the district court clearly erred by adopting the magistrate judge's credibility determination. Specifically, Biggs claims that Officer Thelan's testimony should be discredited because there were no video or audio recordings of the events, because no federal officers were involved in the arrest, and because the purported drug buyers and confidential informant remained unidentified and unavailable to testify. Biggs also points to discrepancies in Officer Thelan's testimony, including whether he identified Biggs as matching the informant's description when he drove by the intersection or during surveillance, and whether Biggs threw the drugs to the "ground" or the "floor."[2] He also questioned why Officer Thelan could recall that the lights were on in the apartment, but not whether anyone else was present in the apartment. Finally, Biggs notes that although Officer

---

[1] The "virtually never" language originates in a Supreme Court decision which stated, "a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence[;] that finding, if not internally inconsistent, can virtually never be clear error." *Anderson v. Bessemer City*, 470 U.S. 564, 575-76 (1985) (citations omitted).

[2] Biggs himself conflated these terms, testifying at the evidentiary hearing that "[t]hey handcuffed all of us and told us to get on the ground—I mean on—on the floor."

Thelan stated that Biggs was wearing a cream-colored sweater, his booking photograph depicts him in a green and white jersey. Biggs's counsel explored each of these issues during the evidentiary hearing before the magistrate judge. The magistrate judge thoroughly evaluated the testimony, concluding that "[o]n balance" Officer Thelan's testimony was more credible than the version of events presented by Biggs, the two women, and the other man in the apartment. Elaborating on their demeanor, the magistrate judge explained that Biggs's witnesses exhibited a "tone of voice and body language suggest[ing] that they were either making things up, trying to remember the right thing to say, or trying to avoid saying the wrong thing." The magistrate judge also noted that Biggs's witnesses were "inconsistent amongst themselves in significant respects" and found cause for bias in their testimony. Given the divergent versions presented by the government and the defense, which version to believe is purely a credibility determination. We find no clear error in the crediting of Officer Thelan's testimony which, contrary to Biggs's assertions, is not implausible. *See United States v. Pedroza*, 269 F.3d 821, 825-26 (7th Cir. 2001) ("As there is nothing physically impossible or otherwise disqualifying about these [credibility] findings and determinations, we reject those arguments [challenging the magistrate judge's credibility determination].") Once this testimony is deemed credible, Officer Thelan's observations provided a basis for both probable cause and reasonable suspicion. *Schaafsma*, 318 F.3d at 722. Accordingly, the arrest was valid and there is no cause for suppression of the evidence seized pursuant to the arrest.

  Biggs next argues that the guns and the drugs found at 4844 W. Huron should have been suppressed as evi-

dence because he did not voluntarily consent to the search. Although there was no warrant to search Biggs's home, a warrantless search is constitutional under the Fourth Amendment if Biggs consented voluntarily. *United States v. Grap*, 403 F.3d 439, 443 (7th Cir. 2005). To evaluate voluntariness, we look to the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973). In particular, "[w]e consider the following criteria: (1) the age, education and intelligence of the defendant; (2) whether [defendant] was advised of his constitutional rights; (3) the length of detention prior to consent; (4) whether [defendant] consented immediately or police made repeated requests for consent; (5) whether physical coercion was used; (6) whether [defendant] was in custody." *United States v. Strache*, 202 F.3d 980, 985 (7th Cir. 2000) (citation omitted). The district court adopted the magistrate judge's conclusion that Biggs's consent was voluntary. We review "only for clear error" this factual question of whether Biggs "freely and voluntarily consented." *Pedroza*, 269 F.3d at 829 (citing *United States v. Raibley*, 243 F.3d 1069, 1076 (7th Cir. 2001)).

The magistrate judge's opinion considered each of the above factors. The judge found that "the testimony presented at the hearing shows that Mr. Biggs is an articulate adult with a tenth or eleventh grade education, a substantial employment history, and an intimate familiarity with the criminal justice system." The officers advised Biggs of his constitutional rights with *Miranda* warnings. Although Biggs was in custody, and about four officers were present, Biggs signed a form consenting to the search within, as the magistrate judge found, "at most" twenty-five minutes of being arrested, handcuffed, and seated in a police vehicle. Furthermore, there is no evidence of

physical coercion. Biggs testified that the officers yelled at him and threatened to arrest others at his residence, but the magistrate judge did not credit this testimony in his opinion. Although choosing an abandoned candy factory parking lot as a location for signing a consent form may be a bit odd, the location was within two miles of his residence and roughly at some point between the basement apartment where he was arrested and the residence where the guns and drugs were found. Under these circumstances, we conclude that the district court did not commit clear error in adopting the magistrate judge's finding that Biggs voluntarily consented. *Cf. Strache*, 202 F.3d at 982 & 985-86 (finding voluntary consent when a defendant was awakened, handcuffed, held in custody for twenty minutes with five officers present, and not given *Miranda* warnings).

   Biggs further claims that he did not voluntarily consent because he consented only after the officers allegedly promised to release him if he provided them with guns. As the magistrate judge found, however, Biggs himself first proposed the guns-for-freedom deal to the officers after receiving *Miranda* warnings. The officers never affirmatively accepted the offer, and only responded with questions relating to the guns and their location. Under the version of events credited by the magistrate judge and district court, in which we again find no clear error, this was not improper. The officers' questions may have misled Biggs into thinking that the officers were at least interested in accepting his offer, but neither their questions nor Biggs's misunderstanding rendered his consent involuntary. *See United States v. Rutledge*, 900 F.2d 1127, 1130 (7th Cir. 1990) (noting that officers "are allowed to play on a suspect's ignorance, his anxieties, his fears,

and his uncertainties; they are just not allowed to magnify those . . . to the point where rational decision becomes impossible."). The officers in this case did not lie and never affirmatively stated that Biggs would be released upon the recovery of the weapons. They did not caution him about his possible misunderstanding, but the officers are not "fiduciar[ies] of the suspect." *Id.* Furthermore, the form that Biggs signed also stated on the line immediately above his signature that he had not "received any threats, promises, or duress of any kind." Therefore, in the totality of the circumstances, Biggs's mistaken belief that he would be released if he turned over guns does not render his consent involuntary; the district court did not commit clear error in determining that Biggs voluntarily consented to the search.

Biggs next argues that the jury's handling of the crack cocaine exhibit during deliberations prejudiced the verdict. The jury initiated this viewing by sending a note to the court that read, "[a]re we allowed to look at the 2.3 grams of cocaine (exhibit 13)?" The district court judge convened the parties to discuss the request. The district judge noted that the particular exhibit had not been passed to the jury during trial, apparently due to inadvertence.

"We afford the district court considerable discretion in the handling of exhibits during the course of a trial as well as during jury deliberations. We review the district court's handling of the exhibits for a clear abuse of discretion." *United States v. Arroyo*, 406 F.3d 881, 886 (7th Cir. 2005) (internal citations omitted). In this case, we find no error in the decision to permit the jury, following their request, to view the cocaine exhibit during deliberations. The government had referred to the exhibit during clos-

ing arguments, emphasizing that the packaging of the drugs recovered at the apartment and the drugs recovered at the residence was identical, and therefore suggested that Biggs possessed both stashes of drugs. Since the admitted exhibit was not passed among the jurors during trial, and since they requested to see the exhibit during deliberations, and since the government referred to the exhibit in its argument, it was reasonable and no abuse of discretion for the district court to fulfill the jurors' request. Biggs suggests that the district court should have instructed the jury not to place undue emphasis on the exhibit, but counsel never requested such an instruction from the district court. Accordingly, he has forfeited this request for a cautionary instruction and fails to demonstrate prejudice from its omission. *See Montes v. Jenkins*, 626 F.2d 584, 588 (7th Cir. 1980) (noting that a defendant's "failure to request [a cautionary instruction] means he must demonstrate, at the least, that he was prejudiced by the absence of a cautionary instruction.").

Biggs further objects to the manner in which the jury viewed the exhibit and handled it as they passed it around in the courtroom. Biggs argues that if the exhibit had been sent into the jury room, the circumstances would have placed less emphasis on the exhibit. Before the district court, however, Biggs explicitly waived an objection to the manner of presenting the evidence to the jury in the courtroom. When asked by the court whether he "object[ed] to bringing the jury back into the courtroom to pass that around," Biggs's counsel responded that "[w]ithout waiving my initial objection [ ] of it not going on at all, if we're going to do it, I think that probably is the best way to do it." Accordingly, any objection to the manner of the presentation of the contraband to the

jury has been waived. *United States v. Redditt*, 381 F.3d 597, 602 (7th Cir. 2004).

We turn at last to the sentencing issues that Biggs raises. Biggs first argues that the rebuttable presumption of reasonableness applied in this circuit is a violation of *United States v. Booker*, 543 U.S. 220 (2005). He concedes that the issue is foreclosed by circuit precedent, noting that he raises this issue only to preserve it for further review. *See United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). His issue is preserved, but we adhere to the holding in *Mykytiuk*.

Biggs next argues that his sentence is unreasonable. Biggs qualifies as a career offender under United States Sentencing Guidelines Manual § 4B1.1, making his advisory sentencing guideline range, which he does not contest, 360 months to life imprisonment. The district court sentenced him to 360 months of imprisonment on each count, to run concurrently, which was the bottom of the advisory guideline range. The statutory minimum for Biggs's offense was twenty years of imprisonment. 21 U.S.C. § 841(b). Biggs argues on appeal that a sentence at the statutory minimum of 240 months would better meet the guidelines's requirement that the sentencing court craft a sentence "sufficient, but not greater than necessary" to comply with 18 U.S.C. § 3553(a)(2). In particular, he argues that a lower sentence is warranted because of the small amount of cocaine recovered during the initial stop and the fact that he would not be released until approximately age 63, which he argues makes him less of a danger to the public. Biggs also claims that his sentence is disproportionately long compared to those others received for career offender drug trafficking convictions, although he fails to take into account distinguish-

ing facts of his case, such as his decision to proceed to trial, thereby losing a reduction in his base offense level for accepting responsibility.

As we have previously noted, "[t]his Court's role is not to choose between possible sentences but rather to review the reasonableness of the sentence imposed by the district court." *United States v. Jung*, 473 F.3d 837, 845 (7th Cir. 2007) (citation omitted). In arriving at the sentence, the district court examined Biggs's arguments, reviewed letters submitted by his family and supporters, considered the nature of the offense, and emphasized Biggs's recidivism. The district judge appropriately weighed and articulated the relevant factors in choosing a sentence. Given the nature of the offense and Biggs's significant criminal history, a sentence at the bottom of the guideline range is not greater than necessary. In sum, we find Biggs's sentence to be reasonable.

III.

We conclude that the magistrate judge's credibility findings, as accepted and adopted by the district court, were not clearly erroneous. This credited version of the facts entails that probable cause existed for Biggs's arrest and that he voluntarily consented to the search of his residence, making suppression of the evidence recovered in the arrest and search unwarranted. At trial, the district court did not abuse its discretion in permitting the jury to view an exhibit of crack cocaine during deliberations. Finally, we conclude that Biggs's sentence was reasonable. Accordingly, we AFFIRM both Biggs's convictions and sentence.

No. 05-4613                                                  15

A true Copy:

    Teste:

                        _____

                        *Clerk of the United States Court of*
                        *Appeals for the Seventh Circuit*