# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-4323

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TIMOTHY STEWART,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Southern District of Indiana, Evansville Division.
No. 01 CR 32—**Richard L. Young**, *Judge.*

———————

ARGUED SEPTEMBER 18, 2007—DECIDED AUGUST 4, 2008

———————

Before EVANS, WILLIAMS, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Defendant Timothy Stewart was found guilty of robbing a bank in Evansville, Indiana, and using a firearm in connection with that crime. He was sentenced to 159 months in prison. On his initial appeal to this court, he argued that his videotaped confession, played for the jury at trial, was the product of a sequential method of interrogation in which *Miranda* warnings were withheld until after he made an inculpatory statement, in violation of the Supreme Court's holding in *Missouri v. Seibert*, 542 U.S. 600 (2004). We

remanded to the district court for findings on whether the police had deliberately used a two-step interrogation technique designed to circumvent the requirements of *Miranda v. Arizona*, 384 U.S. 436 (1966). When the case returned to this court, we again remanded to the district court for more particularized findings on whether the interrogating officer intentionally withheld *Miranda* warnings as part of a question-first, warn-later strategy. On the second remand, the district court specifically credited the officer's explanation for belatedly delivering *Miranda* warnings and found that the officer had not engaged in a deliberate circumvention of *Miranda*.

We affirm. Whether the interrogating officer deliberately withheld *Miranda* warnings as part of a two-step interrogation process designed to elicit an unwarned confession is a question of fact that we review for clear error. The district court's supplemental findings were not clearly erroneous, and therefore the admission of Stewart's postwarning confession was not improper under *Seibert*. We also agree with the district court that the inculpatory statement Stewart made before being *Mirandized* was voluntary. Accordingly, although inadmissible (and not admitted) at trial, Stewart's unwarned, first statement did not affect the admissibility of his second, fully warned and voluntary confession. *See Oregon v. Elstad*, 470 U.S. 298, 314 (1985).

## I. Background

The background facts of this case were laid out in substantial detail in our earlier decision in this case, *United States v. Stewart* ("*Stewart I*"), 388 F.3d 1079 (7th Cir. 2004), and need only be summarized here. Stewart was

detained at a perimeter checkpoint established by the Evansville Police Department following an armed robbery at the Old National Bank. The officer running the checkpoint believed Stewart matched a general description of the robber given to the dispatcher by another officer who observed a black man running away from the scene of the crime carrying a rifle and a duffel bag.

Evansville Detectives Larry Nelson and Dan Winters arrived at the checkpoint shortly after Stewart was detained. Winters removed Stewart's handcuffs. Stewart, unprompted, then suggested they get in the detectives' squad car; once in the car, he told Winters to "drive" and "take me downtown." Winters stayed put. A few minutes later Nelson received information that Stewart's cell phone was found near the bank robber's abandoned getaway car. Winters then rehandcuffed Stewart, and the detectives took him downtown to the police station. During the short trip to the station, Nelson asked Stewart if he was the bank robber; Stewart denied any involvement. Stewart was not given *Miranda* warnings at this time, although the parties agreed in the initial appeal of this case that he was now in custody.

At the station the detectives removed Stewart's handcuffs, placed him in an interview room, and asked again whether he was involved in the robbery. Stewart told them that another man, Duel Felders, committed the robbery and that he (Stewart) provided Felders with the gun and car. Winters and Nelson then left the interview room to put out a "BOL" ("Be on Lookout") for Felders. Nelson met two FBI agents in the hallway who accompanied him back into the interview room. The agents identified themselves and Stewart began to cry. Nelson asked him if he committed the robbery. Stewart admitted doing

so and said that he did it alone. At that point Nelson administered *Miranda* warnings and Stewart signed a *Miranda* waiver form. He then gave a detailed videotaped confession, which was played for the jury at trial over the objection of his counsel. (As required by *Miranda*, Stewart's unwarned statement was excluded.) The jury returned a verdict of guilty.

Stewart appealed, arguing that his videotaped confession was involuntary and the product of a question-first, warn-later interrogation technique in violation of the Supreme Court's intervening decision in *Seibert*. We agreed with the district court that Stewart's post-*Miranda* confession was voluntary, but concluded there was insufficient evidence on the question of whether the officers deliberately employed a two-step interrogation process in circumvention of *Miranda*. We remanded the case to the district court for further factfinding on this point.

On remand the district court again found Stewart's pre- and post-*Miranda* statements voluntary. The court further held that the detectives did not violate *Seibert* because the Evansville Police Department did not have an official policy directing officers to use a two-step interrogation technique and did not train its officers to question suspects in this fashion. Stewart again appealed. We declined to reconsider our prior holding affirming the district court's voluntariness finding as to Stewart's postwarning confession and again remanded the case to the district court for more specific findings on the question whether the *interrogating officer* had deliberately engaged in an end-run around *Miranda.* (On the first remand, the district court had focused solely on the Police Department's lack of a policy or training practice regarding two-step interrogations.) We directed the dis-

trict court to make findings on "the explanation given by the officer for the failure to administer warnings in a timely fashion and the credibility of that explanation in light of the totality of relevant circumstances surrounding the interrogation." *United States v. Stewart* ("*Stewart II*"), 191 F. App'x 495, 498-99 (7th Cir. 2006).

The district court then made supplemental findings of fact and conclusions of law in response to our order in *Stewart II*. After reexamining Detective Nelson's testimony, the court accepted his explanation for failing to *Mirandize* Stewart earlier in the interrogation. Nelson testified that he did not think Stewart was in custody until he told the officer he provided a gun and a car to Felders. Stewart had himself asked to be taken downtown to the police station, which Nelson construed as a voluntary encounter, not custody. Nelson also testified that he did not deliver *Miranda* warnings immediately after Stewart implicated himself as an accomplice to Felders because he was in a rush to get out a BOL on Felders. The court credited these explanations and reaffirmed its prior holding. Stewart appealed for a third time.

## II. Discussion

In *Seibert*, the Supreme Court considered the question of the admissibility of a confession obtained by a two-step interrogation process in which *Miranda* warnings were delivered mid-interrogation, after an initial and unwarned inculpatory statement by the suspect. The Court did not, however, achieve a majority opinion regarding how such sequential interrogations ought to be evaluated. Previously, the admissibility of a postwarning confession obtained after an earlier, unwarned inculpatory state-

ment was governed by *Elstad*, which required an inquiry into whether the pre- and postwarning statements were voluntary. 470 U.S. at 310-11. If the unwarned, first statement was voluntary, then the second statement would be admissible under *Elstad* provided it, too, was voluntary and obtained after compliance with *Miranda*. *Id.* at 318. If the unwarned, first statement was involuntary, however, the admissibility of the second, warned statement would depend upon whether there was a sufficient separation in time and circumstances between the first and second statements so the coercive taint of the first did not carry over to the second. *Id.* at 310.

*Seibert* altered *Elstad*'s approach to sequential interrogations, at least in certain respects. In *Stewart I*, we traced the *Seibert* plurality opinion and the concurrences of Justices Breyer and Kennedy and concluded that "at least as to *deliberate* two-step interrogations in which *Miranda* warnings are intentionally withheld until after the suspect confesses, the central voluntariness inquiry of *Elstad* has been replaced by a presumptive rule of exclusion." *Stewart I*, 388 F.3d at 1090. Reconciling Justice Kennedy's concurrence with the plurality opinion, we concluded that in cases *not* involving the *deliberate* use of a two-step interrogation, "*Elstad* appears to have survived *Seibert*." *Id.* Justice Kennedy's concurrence, however, did not address the burden of proof or standard of review applicable to the determination of deliberateness; we turn to those threshold matters before taking up the substance of the district court's supplemental findings.

## A.  Burden of Proof

The government bears the burden of demonstrating the admissibility of a confession. *Brown v. Illinois*, 422 U.S. 590,

603-04 (1975). This requires the government to prove by a preponderance of the evidence the defendant's *Miranda* waiver and the voluntariness of the confession. *Seibert*, 542 U.S. at 608 n.1 (citing *Colorado v. Connelly*, 479 U.S. 157, 169 (1986), and *Lego v. Twomey*, 404 U.S. 477, 489 (1972)). Whether the police deliberately used a two-step interrogation method designed to circumvent *Miranda* is a factual inquiry that bears upon the admissibility of the defendant's confession. Accordingly, where the defendant's confession was obtained during a sequential interrogation with *Miranda* warnings delivered midstream, the government bears the burden of proving the police did *not* deliberately withhold the warnings until after they had an initial inculpatory statement in hand. *See United States v. Ollie*, 442 F.3d 1135, 1142-43 (8th Cir. 2006) (finding that the government must prove lack of deliberateness by a preponderance of the evidence because "[p]lacing that burden on the prosecution is consistent with prior Supreme Court decisions that require the government to prove the admissibility of a confession before it may come into evidence").

**B.  Standard of Review**

There is not yet a general consensus among the circuits about the standard of review that applies to *Seibert*-deliberateness determinations, but the trend appears to be in the direction of review for clear error. *See United States v. Torres-Lona*, 491 F.3d 750, 758 (8th Cir. 2007) (applying clear-error standard of review); *United States v. Narvaez-Gomez*, 489 F.3d 970, 974 (9th Cir. 2007) (applying clear-error standard of review); *United States v. Carter*, 489 F.3d 528, 536 (2d Cir. 2007) (without deciding the matter, appearing implicitly to apply de novo review); *United*

*States v. Nunez-Sanchez*, 478 F.3d 663, 668-69 (5th Cir. 2007) (without deciding the matter, appearing implicitly to apply clear-error review); *United States v. Street*, 472 F.3d 1298, 1314 (11th Cir. 2006) (without deciding the matter, appearing implicitly to apply de novo review); *United States v. Naranjo*, 426 F.3d 221, 232 (3d Cir. 2005) (applying clear-error standard of review); *United States v. Mashburn*, 406 F.3d 303, 309 (4th Cir. 2005) (applying clear-error standard of review).

A district court's decision to admit a confession is ordinarily reviewed under a split standard of review: legal issues and the "ultimate question of whether a confession is voluntary" are subject to de novo review, but the district court's underlying factual findings (including whether the defendant's *Miranda* waiver was voluntary) are reviewed for clear error, "especially when the suppression decision turn[s] on the credibility of the witnesses." *United States v. Walker*, 272 F.3d 407, 411-12 (7th Cir. 2001). The question of whether the interrogating officer deliberately withheld *Miranda* warnings will invariably turn on the credibility of the officer's testimony in light of the totality of the circumstances surrounding the interrogation. This is a factual finding entitled to deference on appeal; we will apply the clear-error standard of review.

"We generally defer to the district court's determination of credibility because, unlike our review of transcripts, the district court had the opportunity to listen to testimony and observe the demeanor of witnesses at the suppression hearing." *United States v. Biggs*, 491 F.3d 616, 621 (7th Cir. 2007) (internal quotation marks omitted). In this context, the clear-error standard is especially difficult to surmount; we will accept the district court's

credibility finding "unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *United States v. Huebner*, 356 F.3d 807, 813 (7th Cir. 2004) (internal quotation marks omitted). Stated differently, "determinations of witness credibility can virtually never be clear error." *Biggs*, 491 F.3d at 621 (internal quotation marks omitted).

## C. The District Court's Supplemental Findings

Stewart argues as a general matter that in a custodial interrogation, a police officer's deferral of *Miranda* warnings until after the suspect makes an incriminating statement should always give rise to an inference of deliberateness. For support he cites the Ninth Circuit's decision in *United States v. Williams*, 435 F.3d 1148, 1160 (9th Cir. 2006), but that case does not help him here. In *Williams*, the Ninth Circuit analyzed the split opinions in *Seibert* and observed that once a suspect is in custody and subjected to interrogation, "there is rarely, if ever, a legitimate reason to delay giving a *Miranda* warning until after the suspect has confessed." 435 F.3d at 1159. "Instead," the court noted, "the most plausible reason for the delay is an *illegitimate* one, which is the interrogator's desire to weaken the warning's effectiveness." *Id.* The Ninth Circuit went on to hold, however, that "[t]he court should consider any objective evidence or available expressions of subjective intent" to determine whether "the officer acted deliberately to undermine and obscure the warning's meaning and effect." *Id.* at 1160. Justice Kennedy's concurrence in *Seibert* suggested a number of plausible reasons why an officer might legitimately wait to deliver *Miranda* warnings, including that "[a]n officer may not realize that a suspect is in custody and warnings are

required." *Seibert*, 542 U.S. at 620 (Kennedy, J., concurring). Indeed, that was the officer's explanation here, and the district court found it credible.

Stewart attacks Nelson's testimony as inherently in-credible. He argues that Nelson's explanation for de-ferring *Miranda* warnings—that he mistakenly believed Stewart was not in custody until he implicated Felders, with himself as an accomplice—is simply unworthy of belief. But "the task of defining custody is a slippery one, and policemen investigating serious crimes cannot realistically be expected to make no errors whatsoever." *Elstad*, 470 U.S. at 309 (internal quotation marks & brackets omitted). The point at which a suspect is in custody is determined objectively—a suspect is in custody when a reasonable person in the suspect's circumstances would not have felt free to leave. *United States v. Thompson*, 496 F.3d 807, 810-11 (7th Cir. 2007). The subjective belief of the officers involved is generally irrelevant. *Stansbury v. California*, 511 U.S. 318, 323-24 (1994). In this context, however, Nelson's subjective belief about Stewart's custodial status *is* relevant to the evaluation of his reasons for deferring *Miranda* warnings. Although we held in *Stewart I* (and the parties agreed on appeal) that Stewart was in custody when Winters rehandcuffed him at the checkpoint and the detectives took him to the police station, the district court was entitled to credit Nelson's contrary, though mistaken, subjective belief.

In this regard, Stewart also maintains the district court misinterpreted the import of his demand to "take me downtown." He argues Nelson could not reasonably have believed this made his trip to the police station a voluntary encounter. When Stewart made this demand, however, he was not handcuffed and had himself sug-

gested to Winters, "Let's get in your car." In initially denying Stewart's suppression motion, the district court had concluded that Stewart was not in custody at the checkpoint. In *Stewart I,* we disagreed, but the court was entitled on remand to credit Nelson's explanation that he waited to give *Miranda* warnings because he mistakenly believed Stewart was accompanying the officers voluntarily.

Stewart also attacks Nelson's failure to give *Miranda* warnings at an earlier point during the interrogation at the station house—immediately after he incriminated himself as an accomplice to Felders. Nelson acknowledged that he knew, at this point, that the warnings were required, and Stewart suggests that the failure to immediately provide them suggests that they were deliberately withheld. The district court accepted Nelson's explanation that he failed to deliver the warnings at this point in the interrogation in his rush to get a BOL out on Felders and because of his subsequent encounter with the FBI agents in the hall. Nelson said: "[W]hen I came back in the room, by that time the FBI was coming in the room, and they started talking to him." He also testified: "When I came back in the room, of course, the agents came in and identified themselves, so I'm sure that had something to do with it, but it's still my error."

Stewart's counsel suggested at oral argument that Nelson did not leave the interview room to get information out on Felders but instead to tell the arriving FBI agents that Stewart was about to "break." Nothing in the record supports this assertion. Special Agent Williams testified that Detective Winters first came into the hall to inform him of the information on Felders; then "Detective Larry Nelson exited the same interview room and came out

and indicated that—basically the same information that Detective Winters had indicated." Agent Williams testified that he and Special Agent Beck then went into the interview room to question Stewart along with Nelson, and at that point Stewart began to cry and admitted committing the robbery. This corroborates Nelson's explanation. The existence of a plausible alternative explanation—that Nelson deliberately withheld *Miranda* warnings because he wanted to capitalize on Stewart's weakened emotional state—does not itself undermine the district court's credibility determination. The court did not clearly err in accepting Nelson's explanation for delaying the *Miranda* warnings.

Stewart raises two additional challenges to the district court's deliberateness findings. First, he contends the district court applied an incorrect legal standard when it considered the degree of overlap between his pre- and post-*Miranda* confessions in analyzing whether the two-step interrogation method was deliberately employed. The district court noted that "the content of the pre- and post-*Miranda* statements did not overlap"—Stewart's pre-warning statement was limited to his admission that he committed the robbery alone, and his postwarning statement was not just a repetition of the first but contained far more detail.

For the *Seibert* plurality, the degree of overlap between pre- and post-*Miranda* statements bears upon the question whether "*Miranda* warnings delivered midstream could be effective enough to accomplish their object." *Seibert*, 542 U.S. at 615. For Justice Kennedy, an inquiry into the differences in time and circumstances between the first and second statement is necessary only when the interrogating officer uses a "deliberate two-step

strategy, predicated upon violating *Miranda* during an extended interview." *Id.* at 621 (Kennedy, J., concurring). "If the deliberate two-step strategy has been used, postwarning statements that are related to the substance of prewarning statements must be excluded unless curative measures are taken before the postwarning statement is made." *Id.* at 622. Justice Kennedy suggested that a "substantial break in time and circumstances" between the two statements "may suffice" as adequate curative measures "in most circumstances." *Id.*

Here, the district court cited the relative lack of overlap between Stewart's pre- and post-*Miranda* statements as objective evidence that Detective Nelson had not deliberately used a two-step interrogation strategy—*not* as in the *Seibert* plurality, as a measure of the effectiveness of midstream *Miranda* warnings or, as in Justice Kennedy's concurrence, to evaluate whether sufficient "curative measures" were proven. Nevertheless, the district court's approach was not error. The *Seibert* plurality noted that the point of using a two-step process "is that with one confession in hand before the warnings, the interrogator can count on getting its duplicate, with trifling additional trouble." *Id*. at 613. Conversely, the lack of overlap between the warned and unwarned statements is evidence that the interrogator did not deliberately use a two-step strategy designed to circumvent *Miranda*.

Stewart also argues the district court's failure to consider Detective Winters's reasons for omitting *Miranda* warnings was error. We disagree. The court's factual findings establish that Nelson was the lead detective and that Winters's involvement in the actual interrogation was collateral. Nelson confronted Stewart with

information about the cell phone found at the scene. Nelson questioned Stewart during the short ride to the police station and initially in the interrogation room. After Winters left the interrogation room, Nelson asked the question that elicited Stewart's initial admission to committing the robbery alone, and Nelson subsequently advised Stewart of his rights and obtained a *Miranda* waiver. Under cross-examination by Stewart's counsel, Winters testified explicitly that "Detective Nelson was the lead investigator on this."

The determination of whether a question-first strategy was deliberately used does not require an inquiry into the state of mind of *every* officer involved in the interrogation. It is enough here that the district court credited Detective Nelson's reasons for omitting *Miranda* warnings. He was the lead investigator and was responsible for the bulk of the interrogation. That Detective Winters played only a supportive role in the interrogation is borne out by the record; the absence of any inquiry into his reasons for omitting *Miranda* warnings does not undermine the district court's acceptance of Nelson's explanation.

### D.  Voluntariness of Stewart's Pre-*Miranda* Statement

Finally, Stewart argues that his pre-*Miranda* statement was involuntary and that the coercive taint carried over to his post-*Miranda* statement, making it inadmissible under *Elstad.* In *Stewart I,* we affirmed the district court's conclusion that Stewart's postwarning confession was voluntary and remanded for findings on whether the police deliberately used a two-step interrogation process designed to circumvent *Miranda*, and if so, for a further inquiry into the sufficiency of the separation in time and

circumstances between the warned and unwarned confessions. 388 F.3d at 1091-92. Our remand instructions also told the district court that if it found that the interrogation process used here was *not* a deliberate end run around *Miranda,* it should determine "whether the initial unwarned confession would flunk the voluntariness standard of *Elstad* such that the taint would carry over to the second warned confession." *Id.* at 1091. The district court found "no evidence of any coercive police activity relative to [Stewart's] pre-*Miranda* statement."

Stewart points to the fact that he began to cry when the FBI agents entered the interrogation room and argues that this undercuts the district court's voluntariness finding. His emotional reaction to the entry of the FBI into the investigation is hardly evidence of coercive interrogation tactics and does not by itself call into question the voluntariness of his pre-*Miranda* statement. The voluntariness inquiry asks whether the confession is "the product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will." *United States v. Gillaum*, 372 F.3d 848, 856 (7th Cir. 2004) (internal quotation marks omitted). We agree with the district court that there is no evidence of any form of police coercion at work here. Stewart's *Mirandized* and voluntary videotaped confession was properly admitted at trial.

AFFIRMED.