In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-3063

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DANIEL LITTLEDALE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 07 CR 00447—**Matthew F. Kennelly,** *Judge.*

ARGUED APRIL 5, 2011—DECIDED JULY 12, 2011

Before EASTERBROOK, *Chief Judge*, and BAUER, *Circuit Judge*, and YOUNG, *District Judge*.*

BAUER, *Circuit Judge*. Daniel Littledale pleaded guilty to distributing child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) but reserved his right to appeal the denial of his motion to suppress. We affirm.

* The Honorable Richard L. Young, Chief Judge of the United States District Court for the Southern District of Indiana, sitting by designation.

## I. BACKGROUND

In early 2007, agents from the Department of Homeland Security Immigration and Customs Enforcement (ICE) discovered that an individual in Illinois was using the username "neodmoney" to send and receive images of child pornography. Upon further investigation, they learned that the username was associated with an address in Hanover Park where Richard Ahrens, Dale Ahrens (Richard's brother), and Cynthia Littledale resided.

Special Agent Jennifer Sapper prepared a federal warrant for the residence. The operational plan associated with this warrant indicated that Richard was the target of the investigation and believed to be "neodmoney" because (1) he lived in the house; (2) he attempted suicide in 2002; and (3) ICE has found that individuals who possess and distribute child pornography are predominately male. The operational plan also assigned ICE agents to interview Richard, Cynthia, and other individuals the agents expected to encounter during the search; no agent was assigned to interview Daniel Littledale, Cynthia's twenty-year-old son, because ICE agents did not yet know he resided in the home.

When ICE agents executed the search warrant, Cynthia Littledale informed them that Daniel Littledale lived in the house and that he attended school at the College of DuPage. Because it is ICE's practice to interview all occupants of the home, Agent Sapper immediately dispatched Agents Demetrius Flowers and Timothy Morris to the college. The purpose of interviewing all residents of a household is to (1) learn the passwords on the com-

puters, if any; (2) identify individuals who had access to the computers, saw child pornography on the computers, or saw another person view child pornography on the computers; and (3) rule out from suspicion those individuals who reside in the home but who have not possessed or viewed child pornography.

Agents Flowers and Morris were met by campus police officers when they arrived at the College of DuPage. The officers were in uniform and carrying holstered weapons, but the agents wore blue jeans and T-shirts, one of which read "Special Agent." At this time, the agents did not consider Littledale to be a suspect.

Upon arriving at Littledale's classroom, a campus police officer informed Littledale's professor, "We need Mr. Littledale." Littledale then left the classroom and stood in the hallway while Agent Flowers introduced everyone and asked Littledale if he would agree to speak with them in a private office located within the campus police station. They did so because other people were in the hallway, Littledale's class was adjourning soon, and the agents thought Littledale might appreciate discussing child pornography outside the presence of his peers. Littledale consented. During the short walk to the campus police station, the agents chatted with the defendant about school. They did not draw their weapons, handcuff Littledale, physically touch or threaten to touch Littledale, or search Littledale or his backpack. They used a monotone tone of voice, and they testified that Littledale appeared calm.

The private office in which the agents interviewed Littledale contained a desk, a computer, and other personal items; it was not an interrogation room or an interview room. Littledale sat behind the desk, the agents sat opposite him, and the officers waited outside in the hallway. The door was either mostly or completely shut.

Agent Flowers began the interview by assuring Littledale that he was not under arrest and that he was not in any trouble. The agent then told Littledale that other ICE agents were executing a search warrant at his home and that they would like to ask Littledale some questions. Littledale again agreed to speak to the agents. Approximately twenty-five minutes later, Littledale admitted that he had seen child pornography on the guest bedroom computer, that he had been sending and receiving child pornography for about five or six years, and that his username was "neodmoney" and his password was "blackrose." Agent Flowers then read Littledale his Miranda rights and prepared a statement of rights form, with the words "I was taken into custody" scratched out. Littledale signed the form. He then confessed again, adding that his mother had caught him looking at child pornography in the past.

Littledale also agreed to prepare a written statement and to initial images of child pornography that he remembered seeing or downloading. When the interview concluded, Littledale was not placed under arrest, and he walked out of the police station unescorted and with his backpack.

Littledale moved to suppress all statements that he made before and after he was read his Miranda rights. The district court denied this motion and held that Littledale was never in custody and that the agents were thus never required to read him his Miranda rights. Littledale then pleaded guilty, but reserved his right to appeal the denial of his motion to suppress. The judge sentenced him to 96 months in prison and 20 years of supervised release.

## II.  DISCUSSION

Littledale appeals the district court's denial of his motion to suppress. We review the district court's legal conclusions de novo and its findings of fact for clear error. *United States v. Jackson*, 598 F.3d 340, 344 (7th Cir. 2010).

### A.  Littledale Was Not in Custody

Law enforcement officers must advise suspects of their constitutional right to remain silent and to have counsel present before subjecting them to custodial inter-rogation. *Miranda v. Arizona*, 384 U.S. 436, 471-72 (1996). An interrogation is custodial when "a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. The pertinent question is whether, given the totality of the circumstances, a reasonable person would have felt at liberty to terminate the interrogation and leave. *Yarborough v. Alvarado*, 541 U.S. 652, 662 (2004). The

inquiry is objective, and relevant factors include whether the encounter occurred in a public place; whether the suspect consented to speak with the officers; whether the officers informed the individual that he was not under arrest and was free to leave; whether the individual was moved to another area; whether there was a threatening presence of several officers and a display of weapons or physical force; and whether the officers' tone of voice was such that their requests were likely to be obeyed.[1] *United States v. Snodgrass*, 635 F.3d 324, 327 (7th Cir. 2011).

Applying these factors to this case, we find that Littledale was not in custody at the time of his confession. Littledale twice consented to be interviewed, there was no display of force or physical touching, the officers and agents used a monotone tone of voice, and even though the agents did not tell Littledale that he was free to leave, they did assure him that he was not

---

[1] The Supreme Court recently held that a minor's age is relevant in the custody analysis, "so long as the child's age was known to the officer at the time of police questioning, or would have been objectively apparent to a reasonable officer." *J.D.B. v. North Carolina*, No. 09-11121, 2011 WL 2369508, *9 (U.S. June 16, 2011). Littledale was not a minor. While he has Asperger's Syndrome, the Supreme Court has not indicated that this is a relevant factor in the custody analysis. Nevertheless, to the extent *J.D.B.* applies, we note that nothing in the record indicates that Littledale's mental health condition was known to the agents or officers at the time of the interview or that it was objectively apparent to a reasonable officer.

under arrest. Additionally, although the officers carried holstered weapons, neither the officers nor the agents physically touched, threatened to touch, or handcuffed Littledale.

Finally, although the interview took place in the campus police station, this fact is not dispositive. *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) (stating that Miranda rights are not required "simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect"). The relevant inquiry is still whether a reasonable person would have felt free to leave. Here, Littledale was led to a private office in the campus police station (not an interrogation room or an interview room), he twice consented to be interviewed in the office space, he was not a suspect at the time the agents led him to the office, and the agents brought Littledale to a more private space only because they wanted to avoid discussing child pornography in front of Littledale's peers. These facts, along with the agents' conduct described above, lead us to conclude that under the totality of circumstances a reasonable person would have felt free to leave. We therefore affirm the district court's holding that Littledale was not in custody and that the agents were not required to read him his Miranda rights.

### B. The District Court Never Made a "Deliberateness" Finding

The government argues that even if Littledale was in custody, the agents did not conduct a two-step interview—otherwise known as the "question first, Mirandize later" tactic—in violation of *Missouri v. Seibert*. 542 U.S. 600 (2004). There can be no finding of an improper two-step interrogation, however, unless the officers *deliberately* withheld Miranda warnings until after the suspect confessed. *United States v. Stewart*, 536 F.3d 714, 719 (7th Cir. 2008).

Whether officers deliberately used a two-step interrogation method designed to circumvent *Miranda* is a factual inquiry that we review only for clear error. *Stewart*, 536 F.3d at 719. Here, the district court never made a deliberateness finding. It did not do so because, after finding that Littledale was not in custody, the district court was not required to address the government's alternative arguments. Because we are not in the business of finding facts, we decline to address this argument any further.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of the defendant's motion to suppress.