**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 13, 2016
Decided February 3, 2017

**Before**

RICHARD A. POSNER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 14-3762

| | |
|---|---|
| SAMUEL L. DEWITT, | Appeal from the United States District |
| *Petitioner-Appellant*, | Court for the Western District of Wisconsin. |
| | |
| *v.* | No. 14-cv-38-wmc |
| | |
| UNITED STATES OF AMERICA, | William M. Conley, |
| *Respondent-Appellee*. | *Chief Judge*. |

**O R D E R**

Samuel DeWitt moved under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence for possessing child pornography, arguing that his attorney provided ineffective assistance for failing to move to suppress a confession he made to police and not uncovering potentially exculpatory evidence. The district court denied the motion. The district judge assumed the truth of DeWitt's allegations but concluded that a motion to suppress would have been futile and that the evidence that DeWitt identified was not exculpatory. DeWitt challenges these conclusions on appeal and argues that he was entitled to an evidentiary hearing. We agree with the district court that DeWitt was not entitled to an evidentiary hearing or § 2255 relief and affirm the denial of his motion.

In December 2011, after an investigator downloaded child pornography from an Internet user with an IP address linked to DeWitt's residence, police obtained a warrant and searched his apartment. The police seized electronic devices containing approximately 1,150 images and 34 videos of child pornography, and during the search, DeWitt admitted that he downloaded child pornography. DeWitt later pleaded guilty to possessing child pornography, 18 U.S.C. § 2252(a)(4), and was sentenced to 96 months' imprisonment.

In January 2014 DeWitt filed a § 2255 motion in which he articulated several ways that he believed that his attorney failed him, but only two are relevant to his appeal. First, he argued that his lawyer should have moved to suppress incriminating statements he made to a detective during a search of his apartment because according to DeWitt, the questioning was a custodial interrogation that was conducted without *Miranda* warnings and continued after he invoked his right to counsel. In a declaration appended to the § 2255 motion, DeWitt described the search conducted on December 15, 2011. Detective John Parenteau and four other police officers arrived at his apartment at 9 a.m. to execute the search warrant. DeWitt said that he immediately asked for a lawyer, but he was assured that he wasn't under arrest and would be asked only "some routine questions" while the officers conducted the search.

After taking DeWitt outside to search his car, Parenteau led him back to the apartment and took him to the bedroom. Parenteau closed the door, produced a tape recorder, and began to ask DeWitt questions. DeWitt eventually asked for a lawyer again, but Parenteau responded that a lawyer would not be necessary because he knew that DeWitt was guilty and that DeWitt should "save them a lot of time and effort" by simply confessing. As the questioning continued for an hour or two, DeWitt recounted, Parenteau "kept badgering" him to confess until finally he did so. At this point Parenteau opened the door and DeWitt "rushed out." He then asked the officers, still in his apartment, if he could take his dog outside, but one of them blocked the door briefly before Parenteau said that they had the items that they were searching for and were finished with DeWitt. DeWitt was not arrested that day or afterward; in his declaration he does not mention being placed in custody until November 2012 following his guilty plea.[1]

---

[1] The presentence investigation report likewise notes that he appeared in court via summons and was not arrested.

DeWitt next argued that his lawyer was ineffective for failing to adequately investigate the case. DeWitt alleged that a few months after he was convicted he received a letter from Joshua Kortes, his stepson, who was living with him when his apartment was searched. According to DeWitt, Kortes intimated in the letter that his own statement implicating DeWitt was coerced. DeWitt attached a copy of this letter, signaling the relevant portion:

> [A]lso about my testimony they said if I did not alaborate [sic] it would fall on my head and well … and I really needed to see Sophia … and take care of her through child support so they told me to make a statement … I was spoken out of fear I didn't mean to incriminate you I just wanted to see my baby… I am sorry …

(Ellipses in original.) DeWitt asserted that he was prejudiced by his counsel's failure to obtain this information because Kortes's statement would have produced reasonable doubt of DeWitt's guilt.

The district court denied DeWitt's motion without an evidentiary hearing, concluding that his allegations, even if true, would not establish that his counsel was ineffective. Regarding DeWitt's argument that his attorney should have moved to suppress his incriminating statements, the court concluded that such a motion would have been futile because DeWitt was not in custody when questioned. Although acknowledging that DeWitt's "movements may have been constrained while the search took place," the court concluded that "the overall description [of the encounter] does not match the type of restraint required for custodial interrogation." In support of that conclusion, the court compared his case to others in which defendants were found not to be in custody when they were not restrained or locked in a particular room, law enforcement officials did not threaten them or brandish weapons, and they were not told they could not leave.

Nor did the court accept DeWitt's argument that his counsel's failure to obtain the information disclosed in his stepson's letter evidenced a lack of adequate investigation. The court concluded that the letter contained no suggestions of coercion or exculpatory revelations: "Read generously, Kortes merely apologizes for providing information that demonstrated Dewitt's guilt. … Kortes does not recant his statements to law enforcement or accept responsibility for downloading the child pornography that forms the basis for the criminal charges … ." And regardless of whether DeWitt's lawyer acted unreasonably in investigating the case, DeWitt could not show that he was prejudiced.

The district court denied DeWitt a certificate of appealability, but we later granted his request.

To establish ineffective assistance of counsel, DeWitt must show that "(1) his attorney's performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result." *Wyatt v. United States*, 574 F.3d 455, 457 (7th Cir. 2009) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88, 693 (1984)). On appeal DeWitt challenges the district court's conclusion that he did not allege facts that would meet this standard if true.

DeWitt first contends that the district court erroneously concluded that a motion to suppress his confession would have been unsuccessful. According to DeWitt, the totality of the circumstances as alleged in his declaration would have established that he was in custody when questioned and that the interview continued after he invoked his right to counsel. "In determining whether a person is in custody, our first step is to ascertain whether, in light of the objective circumstances of the interrogation, a reasonable person would have felt that he or she was not at liberty to terminate the interrogation and leave." *United States v. Borostowski*, 775 F.3d 851, 859 (7th Cir. 2014). DeWitt admits that he was told he was not under arrest—a relevant consideration, *see United States v. Patterson*, 826 F.3d 450, 455 (7th Cir. 2016)—but maintains that the officers' behavior belied that assurance. Comparing his case to *Borostowski*, he contends that the number of officers involved in the search of his apartment (five) was a show of force that dominated the scene and would lead a reasonable person to believe that he or she was not free to leave. DeWitt points out that Borostowski was determined to be in custody despite being told that he was not under arrest.

But DeWitt's case differs from Borostowski's in significant ways. For one, the police presence in *Borostowski* (13 officers) was much greater than in this case. Further, DeWitt did not allege that the officers restrained him, another significant factor to how a reasonable person would view the situation. *See Howes v. Fields*, 132 S. Ct. 1181, 1189 (2012). In *Borostowski*, by contrast, an "entry team" of seven agents, one carrying a ballistic shield, pulled Borostowski out of his home, handcuffed him, and forced him to stand outside in the cold without shoes or a coat for approximately 25 minutes while they "secured the home." 775 F.3d at 854–55. And although DeWitt notes that the officers were armed, this by itself is unremarkable for on-duty police officers, *see Patterson*, 826 F.3d at 456–57, and he did not allege that the officers unholstered their weapons or used them in any way.

Nor do the location and circumstances of the interview itself support DeWitt's position. DeWitt compares the bedroom he was interviewed in to the "Lilliputian" interview room in *United States v. Slaight*, 620 F.3d 816, 822 (7th Cir. 2010), but the comparison is inapt. Slaight's interview was conducted in a police station by two officers and "in the claustrophobic setting of a windowless room the size of a bathroom." *Id.* at 820. Here, Detective Parenteau conducted the interview outside the presence of the other officers and in a bedroom in DeWitt's own home. Although Borostowski also was questioned unrestrained in a bedroom in his home, two agents were present, one of whom stood and blocked the door for the duration of the three-hour interview. *Borostowski*, 775 F.3d at 861. DeWitt said that Parenteau closed the door but not that he blocked it.

Also unlike Borostowski, DeWitt was not arrested even after he had confessed, another factor weighing against deciding that he was in custody. *See Howes*, 132 S. Ct. at 1189; *Patterson*, 826 F.3d at 458. Although DeWitt alleged that an officer momentarily blocked his way out of the apartment when he attempted to take his dog outside, this occurred after he had confessed and thus would not be relevant to whether a reasonable person, during the questioning, would have felt free to leave. Further, as the government notes, a brief detention in one's own home during the execution of a search warrant is "substantially less intrusive" than an arrest. *Michigan v. Summers*, 452 U.S. 692, 701–02 (1981) (quoting *Dunaway v. New York*, 442 U.S. 200, 210 (1979)).

Finally, DeWitt points to Parenteau's "badgering" insistence that he was guilty and should confess. One relevant factor in determining custody is "whether the officers' tone of voice was such that their requests were likely to be obeyed." *Patterson*, 826 F.3d at 455 (quoting *United States v. Littledale*, 652 F.3d 698, 701 (7th Cir. 2011)). But DeWitt did not otherwise allege that the detective used threats or behaved in a manner meant to compel compliance, for example, by "yelling, using profanities, [or] threatening arrest." *Id.* at 458. To the contrary, according to DeWitt, Parenteau said that he wanted to "save them a lot of time and effort." DeWitt's allegations, even when considered in combination, do not describe a custodial interrogation; a reasonable person in his position would have felt free to terminate the interview.

DeWitt next argues that the letter he received from his stepson Kortes was evidence that his lawyer failed to properly investigate the case. According to DeWitt, Kortes suggested in the letter that he was responsible for downloading the child pornography and falsely accused DeWitt. But the success of this claim depends on the success of the first because if DeWitt validly confessed to the crime, an admission by

Kortes that he too downloaded child pornography would not have changed the lawyer's recommendation that DeWitt accept the plea offer—the standard for demonstrating prejudice in a failure-to-investigate case. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Warren v. Baenen*, 712 F.3d 1090, 1097 (7th Cir. 2013).

Further, the text of the letter does not permit the interpretation DeWitt gives it. DeWitt thinks it improper that the police told Kortes that the charge could "fall on his head," but the police reasonably could have suspected Kortes of the crime—since he and DeWitt shared the apartment—unless Kortes provided evidence that DeWitt alone was responsible. And nothing in Kortes's letter suggests that his statement to police was false; he simply apologized for making it. DeWitt himself had already confessed to Detective Parenteau when Kortes gave his statement. As the district court noted, in the letter Kortes merely expressed regret that he needed to cooperate with law enforcement to avoid being implicated in DeWitt's crime.

Because the district court properly concluded that DeWitt's allegations do not support a conclusion that his counsel was ineffective, an evidentiary hearing was not necessary, and we AFFIRM the court's denial of his § 2255 motion.