NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 3, 2010
Decided February 4, 2010

**Before**

KENNETH F. RIPPLE, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 09-1205

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. |
| *Plaintiff-Appellee,* | |
| v. | No. 08-CR-00038 |
| REGINALD SMITH, | |
| *Defendant-Appellant.* | Sarah Evans Barker, *Judge.* |

**O R D E R**

Reginald Smith was found guilty by a jury of possessing a firearm after a felony conviction, 18 U.S.C. § 922(g)(1), and was sentenced to 108 months' imprisonment. Smith filed a notice of appeal, but his appointed lawyers represent that the case is frivolous and move to withdraw. *See Anders v. California*, 386 U.S. 738 (1967). Smith objects to counsel's submission. *See* CIR. R. 51(b). We limit our review to the potential issues considered in counsel's facially adequate supporting brief and in Smith's response. *See United States v. Schuh*, 289 F.3d 968, 973-74 (7th Cir. 2002).

At 6:45 a.m. on a December morning in 2007, police in Indianapolis, Indiana, responded to a 911 call reporting that shots had been fired. The accounts given by the police officers and Smith differ as to what happened next. At a pretrial hearing on Smith's motion to suppress his postarrest statements, Officer Figura, the first officer on the scene, noted that the area was deserted except for Smith knocking on a door demanding to be let in. When Figura approached to see if Smith had heard the shots, he saw Smith drop on the sidewalk what turned out to be a .30-caliber rifle. Figura (now joined by backup officers) arrested Smith, searched his pockets, and discovered several .30-caliber bullets. Smith told Figura that it was not his gun. When the officers explained they were arresting Smith because he was found with a gun after a report of shots fired, Smith began swearing at the officers. Figura asked for Smith's identifying information, but he testified that he asked no other questions. Another officer, Decker, testified that he read *Miranda* warnings to Smith from a card. When asked if he understood those warnings, Smith reportedly responded, "I ain't telling you shit."

Police continued to investigate the area, discovering several spent .30-caliber casings. During the investigation, Smith was kept nearby in handcuffs, but police said he was not questioned. Agitated and upset, Smith accosted the investigating officers with a string of lewd and abusive comments, but he also volunteered that he was a member of the 10th Street Vanish Gang and had been shot at by "Mez," a member of a rival gang warring over drug turf.

Smith's version of events was different. Although he admitted making lewd comments after his arrest, he testified that he never saw the rifle, did not have any bullets in his pockets, was not given *Miranda* warnings, and never volunteered that he was shot at or was a member of a gang.

At trial Officers Figura and Decker testified consistently with their testimony at the suppression hearing, as did Smith. The jury returned a guilty verdict. At sentencing, after concluding that Smith's testimony at trial was perjurious and warranted a two-level increase in his offense level, the district court calculated his guidelines range to be 120 months' imprisonment (the range would have been 120 to 150 months but was capped by the statutory maximum). Believing there to be "still some hope" for Smith, the district court sentenced him to 108 months' imprisonment.

In their *Anders* submission, counsel first question whether Smith could challenge the denial of his motion to suppress his postarrest statements. When reviewing a ruling on a motion to suppress, we evaluate factual findings for clear error and questions of law de novo. *United States v. Burnside*, 588 F.3d 511, 516-17 (7th Cir. 2009). Motions to suppress almost always involve fact-specific inquiries, and because it was the district judge who

heard the testimony and observed the witnesses at the suppression hearing, we would defer to the judge's credibility findings, which almost never will be clearly erroneous. *United States v. Stewart*, 536 F.3d 714, 720 (7th Cir.), *cert. denied*, 129 S. Ct. 741 (2008); *United States v. Biggs*, 491 F.3d 616, 621 (7th Cir. 2007). Counsel recognize that statements made in response to custodial interrogation would be inadmissible if the defendant was not advised of his constitutional rights to silence and counsel. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966); *United States v. Peterson*, 414 F.3d 825, 828 (7th Cir. 2005). But it was not clearly erroneous for the court to conclude that although Smith initially invoked his right to silence, he later waived that right by volunteering information about the shooting and gang war. Volunteered statements are admissible, *Miranda*, 384 U.S. at 478; *United States v. Hendrix*, 509 F.3d 362, 374 (7th Cir. 2007), so any challenge to the suppression ruling would be frivolous.

Counsel next consider whether Smith might challenge the admission at trial of evidence that the police were responding to a 911 call that shots had been fired, that the arresting officers discovered spent shell casings near Smith, and that the officers were told by Smith that he was shot at because of a gang turf battle. We would review evidentiary rulings for an abuse of discretion, *United States v. Conner*, 583 F.3d 1011, 1018 (7th Cir. 2009), but would reverse a conviction only if the ruling had a substantial influence on the verdict, *United States v. Ortiz*, 474 F.3d 976, 982 (7th Cir. 2007). We would find no abuse of discretion in the admission of this evidence. At trial Smith refused to stipulate that the item found on the sidewalk after his arrest was designed to fire and thus met the statutory definition of a "firearm." *See* 18 U.S.C. § 921(a)(3). Both the .30-caliber casings and the evidence that the police were reacting to a report of gunfire are relevant to the question whether Smith possessed a firearm. *See United States v. Moore*, 25 F.3d 563, 568 (7th Cir. 1994) (observing that presence of bullets is relevant to question whether a "firearm" was possessed). And although the district court initially barred the government from introducing testimony about hostilities between rival gangs, the court changed its view after Smith testified that he never told the officers anything about the shooting; that denial, the court reasoned, opened the door to impeaching testimony concerning what Smith did tell the officers, including his gang affiliation. We would conclude that the testimony was proper because it explained Smith's motive for possessing the firearm and ammunition. Accordingly, any challenge to these evidentiary rulings would be frivolous.

Counsel next consider whether Smith might challenge the sufficiency of the evidence supporting his conviction, a contention we would accept only if, viewing the evidence in the light most favorable to the prosecution, "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *United States v. Harris*, 585 F.3d 394, 402 (7th Cir. 2009). But because the jury could

rely on the police officers' testimony that they saw Smith drop the rifle and that bullets were discovered in his pockets, this challenge would be frivolous.

Counsel and Smith then question whether there might be a nonfrivolous basis for Smith to challenge his prison sentence. Smith proposes to argue that the district court applied a presumption that a sentence within the guidelines range should be imposed. Such a presumption would have been error, *Rita v. United States*, 551 U.S. 338, 351 (2007); *United States v. Smith*, 562 F.3d 866, 872 (7th Cir. 2009), but in Smith's case the district court did exactly as it should: as the district court explained, it would "look at those guidelines and see if they represent a reasonable sentence in this case, in your case; and if not how they should be tweaked or changed or modified." *See Gall v. United States*, 552 U.S. 38, 49-50 (2007); *United States v. Hurt*, 574 F.3d 439, 442 (7th Cir. 2009) (concluding that district court properly calculated sentence and then considered whether that sentence would be reasonable); *Smith*, 562 F.3d at 872 (same). Smith also contends that the district court disregarded *United States v. Booker*, 543 U.S. 220 (2005), by increasing his offense level for obstruction of justice without letting a jury decide whether he perjured himself at trial. We have explained repeatedly, however, that *Booker* holds that guidelines adjustments are for the sentencing court to decide, not the jury. *E.g.*, *United States v. Parr*, 545 F.3d 491, 505 (7th Cir. 2008), *cert. denied*, 129 S. Ct. 1984 (2009); *United States v. Clanton*, 538 F.3d 652, 655 (7th Cir. 2008); *United States v. Roti*, 484 F.3d 934, 937 (7th Cir. 2007). Moreover, because the finding that Smith perjured himself is not clearly erroneous, we would not overturn the two-level increase for obstruction of justice. *United States v. Anderson*, 580 F.3d 639, 648 (7th Cir. 2009). Finally, because it is "hard to conceive of below-range sentences that would be unreasonably high," *United States v. George*, 403 F.3d 470, 473 (7th Cir. 2005), any challenge to the length of the imprisonment term would be frivolous.

Last, counsel consider whether Smith might challenge the district court's denial of his pretrial request for new counsel or the effectiveness of his trial counsel. We would reverse a conviction based on the denial of substitute counsel only if the lawyer who remained on the case was constitutionally ineffective. *United States v. Harris*, 394 F.3d 543, 552 (7th Cir. 2005); *United States v. Zillges*, 978 F.2d 369, 372-73 (7th Cir. 1992). But because, as both counsel and Smith concede, the record is insufficient to determine whether counsel's performance was adequate, any challenge on this record to the court's denial of the request or the effectiveness of his counsel would be best reserved for collateral review. *See Massaro v. United States*, 538 U.S. 500, 504 (2003); *United States v. Turcotte*, 405 F.3d 515, 537 (7th Cir. 2005).

Accordingly, counsel's motion to withdraw is **GRANTED** and the appeal is **DISMISSED**.