**Reversed and Remanded and Majority and Dissenting Opinions filed December 23, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-12-00096-CR

---

### JOSE VASQUEZ, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 228th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1333231**

---

## M A J O R I T Y    O P I N I O N

Appellant Jose Vasquez appeals his conviction for capital murder. After the jury found him guilty, the trial court assessed punishment at life in prison. On appeal, we held the trial court erred in admitting appellant's videotaped confession and such error was harmful, reversed appellant's conviction, and remanded the case to the trial court. The Court of Criminal Appeals granted the State's petition for review, vacated our judgment, and remanded the case to our court with instructions to remand the case to the

trial court for findings of fact and conclusions of law.[1] The trial court rendered findings of fact. Appellant reasserts his complaint that the trial court erred in denying appellant's motion to suppress the videotaped confession he made to an investigating officer during custodial interrogation. Appellant argues that his statement was obtained by an impermissible two-step interrogation technique. We again reverse the trial court's judgment and remand for a new trial.

## *Background*

On April 16, 2010, appellant was arrested pursuant to a warrant and charged with two counts of capital murder. Officers chased, apprehended, and handcuffed appellant at a gas station, placed him in a squad car, and transported him to the police station for questioning. Another suspect named Martinez had been with appellant and was arrested at the same time. Officers placed appellant in an interview room, where he remained for nearly eight hours while being interrogated by three or four investigating officers, including Officers Padilla and Evans. The officer who last questioned appellant, Officer Bolton, ultimately obtained a confession that was not captured on videotape. Soon thereafter, Bolton asked permission to videotape appellant's confession. Appellant complied with the request and repeated his confession.[2]

Appellant filed a written pretrial motion to suppress his confession on grounds that he was not given *Miranda*[3] warnings and he did not validly waive his rights before he confessed. Appellant subsequently filed another pretrial motion to suppress his oral

---

[1] *Vasquez v. State*, 411 S.W.3d 918, 919-20 (Tex. Crim. App. 2013). When a question is raised as to the voluntariness of a statement of an accused, article 38.22 of the Code of Criminal Procedure requires a trial court to enter "an order stating its conclusion as to whether or not the statement was voluntarily made, along with the specific finding of facts upon which the conclusion was based." Tex. Crim. Proc. Code art. 38.22 § 6.

[2] The relevant facts concerning the crime are discussed below.

[3] *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966) (prohibiting use of oral statement of accused made as result of custodial interrogation unless certain warnings are given and accused knowingly, intelligently, and voluntarily waives rights).

2

statements on the sole ground that using the oral statements at trial would be prohibited by Texas Code of Criminal Procedure article 38.22, section 3.[4] The trial court carried the motions with trial and held a hearing outside the presence of the jury to determine the admissibility of the statements.

At the hearing, only Bolton testified. He testified as follows:

[Defense counsel:] And when you got involved . . . Padilla . . . and Evans had been going back and forth interviewing . . . Martinez and [appellant], correct?

[Bolton:] I believe they were interviewing the two defendants in the case. And also I think there was a witness that they interviewed.

[Defense counsel:] . . . And you were in . . . a room where you could look inside while they were talking to [appellant].

[Bolton:] Yes, sir.

[Defense counsel:] And you could hear what Evans and Padilla [were] telling them. . . . You could . . . see them and hear . . . ?

[Bolton:] Both. . . .

[Defense counsel:] And when any other officers read them their *Miranda* warnings, you don't know or if they were read at all 'cause you weren't there?

[Bolton:] Yes, I was there. I was in the monitoring room. When [Evans and Padilla] entered the room, you know, they read [appellant]—and when they interviewed . . . Martinez, they also read him his legal warnings as well. . . .

[Defense counsel:] . . . [W]here was [appellant] located when you saw

---

[4] Texas Code of Criminal Procedure article 38.22, section 3 restricts the admissibility in a criminal proceeding of statements made during custodial interrogation to statements that are recorded and obtained after the accused has been given a statutory warning akin to the *Miranda* warnings and "knowingly, intelligently, and voluntarily waives any rights set out in the warning."

|                     | Evans and Padilla talking to him?                                                                                                                                                                                                                            |
| [Bolton:]           | . . . I was not present when . . . Padilla talked to [appellant]. I was in an interview room talking to . . . Martinez. I was conducting an interview there while . . . Padilla was speaking to [appellant]. So, I was not present when he spoke to him, you know. . . . |
| [Defense counsel:]  | . . . [Y]ou stayed in the little anteroom listening to somebody talking to [appellant] for a while. How long did you stay in there and listen to that? |
| [Bolton:]           | . . . I didn't watch that interview. While . . . Padilla or . . . Evans, either one, was interviewing [appellant] . . . I was interviewing . . . Martinez. |
| [Defense counsel:]  | Okay. So what . . . they said and what they did, you don't know other than what they told you he was saying. |
| [Bolton:]           | Yes, sir. . . . |
| [Defense counsel:]  | And then eventually you decided to go talk to [appellant]. |
| [Bolton:]           | After [I] interview[ed] Martinez, . . . Padilla had already concluded whatever interview he had with [appellant]. . . . And [Padilla] asked me . . . to talk to [appellant]. So, at that time I went to the interview room and . . . began the interview with [appellant]. |

Bolton testified that he gave appellant *Miranda* warnings, as reflected on the videotape, but did not testify that he had previously done so before appellant confessed off-camera:

| [Prosecutor:] | . . . Did you advise him of his legal rights and warnings? |
| [Bolton:]     | Yes, sir, I did. |
| [Prosecutor:] | Did he appear—did you go through each individual |

4

|              |                                                                 |
|--------------|-----------------------------------------------------------------|
|              | legal right and warning with him?                               |
| [Bolton:]    | Yes, sir, I did.                                                |
| [Prosecutor:] | Did he appear to understand each individual legal right and warning? |
| [Bolton:]    | Yes, he did.                                                    |
| [Prosecutor:] | Did he waive each individual legal right and warning that you gave him? |
| [Bolton:]    | Yes, sir, **at the end**.                                       |
| [Prosecutor:] | . . . And did he agree to speak with you having waived those rights? |
| [Bolton:]    | Yes, sir, he did.                                               |

(Emphasis added).  Bolton did not clarify what he meant by "at the end."

At the beginning of the videotape recording, Bolton stated, "I'm going to read your rights to you like I did a little earlier," but he did not indicate on the videotape or in his testimony whether the "earlier" reading of his rights occurred before or after the previous confession had been made. Bolton further testified that appellant never invoked his rights to remain silent or have counsel present.

Appellant testified he invoked his right to remain silent before custodial interrogation began and no officer gave him *Miranda* warnings until after he confessed off-camera. The trial court suppressed the statements that were not captured on videotape but admitted the videotaped confession.

On appeal, we concluded that the State did not meet its burden to present evidence that (1) officers read appellant his *Miranda* rights before appellant made off-camera incriminating statements; and (2) officers did not employ a two-step interrogation technique in a deliberate, calculated way to undermine *Miranda* warnings or take curative measures to ensure appellant would understand the import and effect of

the *Miranda* warning and waiver. *Vasquez v. State*, 397 S.W.3d 850, 854-58 (Tex. App.—Houston [14th Dist.] 2013), *vacated*, 411 S.W.3d 918 (Tex. Crim. App. 2013). We held that the trial court erred in admitting appellant's videotaped statement and such error was harmful. *Id*. at 858-59. We reversed the trial court's judgment and remanded the case for a new trial. *Id*. at 859.

The Court of Criminal Appeals ordered the trial court to determine on remand: (1) whether the original, unrecorded interview was custodial in nature; (2) whether appellant was Mirandized prior to his original interrogation; (3) if not, whether the police deliberately employed a two-step interrogation process; and (4) if they did, whether any curative measures were taken before the second confession. *Vasquez*, 411 S.W.3d at 920. The trial court made the following findings of fact, in relevant part, expressly "based upon the reporter's record in this case and based upon th[e] Court's evaluation of the witnesses' testimony and credibility"[5]:

- Detective Bolton credibly stated that he gave the defendant his legal warnings, and that the defendant waived his rights prior to giving the statements, all of which is reflected on the video.

- Bolton credibly testified that his partner, Investigator Padilla, had interviewed the defendant prior to the formal statement and that Bolton had monitored the interview.

- Bolton credibly testified that Padilla had given the defendant his legal warnings prior to questioning him.

- [A]ny statements indicating that Padilla had not given the defendant his legal warnings prior to questioning him are not credible.

- [T]he defendant was not credible when he testified during the suppression hearing that the officers never read him his legal warnings when they first started talking to him.

---

[5] The trial court did not expressly make any conclusions of law, although some of the trial court's findings are conclusions of law.

- [T]he defendant was not credible when he claimed that he repeatedly told the officers that he did not want to talk to them.

- Bolton credibly testified that the delay in taking a formal interview of the defendant was due to an effort to build rapport with the defendant.

- [T]he defendant's original, unrecorded interview was custodial in nature.

- [T]he defendant was Mirandized prior to his original interrogation.

- [E]ven if the defendant had not been Mirandized prior to his original interrogation, there was no evidence that the police deliberately employed a two-step interrogation process in order to circumvent the protections of Miranda and [there was evidence] that the police did not deliberately employ such a two-step interrogation process. Rather, any delay in the administration of *Miranda* warnings was due to an effort to build rapport with the defendant rather than to intentionally circumvent the protections of *Miranda*.

- [C]urative measures were taken before the second confession by the following procedures: (1) there was minimal reference to the original interrogation in the defendant's recorded statement, (2) different officers conducted the two interviews, (3) a substantial amount of time elapsed between the original interrogation at 5:15 p.m. and the formal recorded statement after midnight, and (4) *Miranda* warnings were again given and waived prior to the second statement, which was recorded.

## *Discussion*

In his sole issue, appellant argues the trial court erroneously admitted the videotaped confession because it was obtained by an improper two-step "question first, warn later" interrogation technique. *See Missouri v. Seibert*, 542 U.S. 600, 622 (2003) (Kennedy, J., concurring); *Carter v. State*, 309 S.W.3d 31, 35–36 (Tex. Crim. App. 2010). A "question first, warn later" interrogation technique consists of officers interrogating a suspect and obtaining a confession without first providing *Miranda* warnings; then, after the inculpatory statements are made, officers provide *Miranda* warnings and obtain a waiver of the warnings. *See Seibert*, 542 U.S. at 604–05. Officers

7

then have the suspect repeat the inculpatory statements in an attempt to cure the lack of *Miranda* warnings.[6] *See id.* at 605.

In reviewing a trial court's ruling on a motion to suppress, appellate courts must view all of the evidence in the light most favorable to the ruling. *State v. Garcia–Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). At a suppression hearing, the trial judge is the sole factfinder. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). We give almost total deference to a trial court's express determination of historical facts when supported by the record. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006); *State v. Ross*, 32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000). The same deference is accorded to determinations of mixed questions of law and fact if their resolution depends upon witness credibility and demeanor. *Ross*, 32 S.W.3d at 856.

Issues that present purely legal questions are considered under a de novo standard. *Dixon*, 206 S.W.3d at 590; *Ross*, 32 S.W.3d at 856. We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). In this connection, when the trial court files findings of fact with its ruling on a motion to suppress, we do not engage in our own factual review, but determine only whether the record supports the trial court's fact findings. *Paolilla v. State*, 342 S.W.3d 783, 792 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

Under *Miranda* and article 38.22 of the Code of Criminal Procedure, an oral statement of an accused made as a result of custodial interrogation is not admissible at trial unless the accused was warned of his rights and knowingly, intelligently, and voluntarily waived those rights. *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966); Tex.

---

[6] The classic example of this technique occurs when "the suspect's first, unwarned interrogation [leaves] 'little, if anything, of incriminating potential left unsaid,' making it 'unnatural' not to 'repeat at the second stage what had been said before.'" *Bobby v. Dixon*, 132 S. Ct. 26, 31 (2011) (citing *Seibert*, 542 U.S. at 616–17)).

8

Code Crim. Proc. art. 38.22 § 3. If the record shows the warnings were received and understood by the accused and he did not invoke his rights, the accused waives the right to remain silent by making an uncoerced statement to the police. *Umana v. State*, No. 14-13-00168-CR, 2014 WL 4199116, at *7 (Tex. App.—Houston [14th Dist.] Aug. 26, 2014, pet. filed). We review the totality of the circumstances as reflected in the record to determine whether the trial court's finding or conclusion that an accused voluntarily waived his rights finds support in the record. *Id*. at *8-9.

In the plurality opinion *Missouri v. Seibert*, four justices of the Supreme Court concluded that a "question first, warn later" interrogation technique circumvented the objective of *Miranda* by rendering any warnings given ineffective. *Seibert*, 542 U.S. at 611–13; *see also Martinez v. State*, 272 S.W.3d 615, 619-20 (Tex. Crim. App. 2008). The *Seibert* plurality found that the purpose of this interrogation technique was to obtain a confession the suspect may not have made if he had understood his rights at the outset. *Seibert*, 542 U.S. at 611. In his concurring opinion in *Seibert,* Justice Kennedy determined that when a two-step interrogation technique is used in a deliberate, calculated way to undermine *Miranda* warnings, absent "curative measures," the post-warning statements must be excluded. *Seibert*, 542 U.S. at 622 (Kennedy, J., concurring). In *Carter*, the Court of Criminal Appeals expressly adopted Justice Kennedy's concurrence in *Seibert. Carter*, 309 S.W.3d at 38.

## I.    Issue Preserved for Appellate Review

The State filed a supplemental brief, arguing for the first time on remand that appellant did not preserve error on his appellate issue because neither of his two pretrial motions to suppress mentioned "*Seibert* or 'midstream warnings' or a 'two-step interrogation'" and appellant's counsel did not mention a "two-step interview" until closing argument at the suppression hearing. The State contends that the focus of the suppression motions was the "voluntariness of the appellant's statement and the State's

compliance with Article 38.22 of the Code of Criminal Procedure, which governs the admission of oral statements."

To preserve an issue for appellate review, a defendant must first raise that issue in the trial court. Tex. R. App. P. 33.1(a). Eschewing hyper-technical requirements for preservation, the Court of Criminal Appeals stated, "[A]ll a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992); *see also Bedolla v. State*, 442 S.W.3d 313, 316 (Tex. Crim. App. 2014).

In his first motion to suppress, appellant asserted that his:

confession was involuntary and was coerced and enticed from [appellant]. [Appellant] was arrested around 11 a.m. and he didn't give a video statement until almost twelve hours later. He was not given his Miranda warnings and had requested an attorney. The officers persistently and coercively interviewed him and wore down his resistance and force[d] him to make a statement.

In his second motion to suppress, appellant contended that he "may have made oral statements after his arrest and the use of [such statements] is prohibited by the Texas Code of Criminal Procedure, Article 38.22, Section 3." Under article 38.22, unrecorded statements of an accused obtained through custodial interrogation are not admissible in a criminal proceeding. Tex. Code Crim. Proc. art. 38.22 § 3. Recorded statements are admissible only if the voices on the recording are identified. *Id*. art. 38.22 § 3(a)(4).

We agree that the focus of the second motion to suppress was on the admissibility of appellant's unrecorded statements under article 38.22. However, the first motion was focused on the voluntariness of appellant's statement, purportedly taken after officers

10

did not give appellant *Miranda* warnings, "persistently and coercively interviewed him[,] wore down his resistance[,] and force[d] him to make a statement."[7]

At the suppression hearing, Bolton testified he Mirandized appellant "at the end" before recording his statement. Thus, the issue regarding voluntariness of appellant's confession in the context of midstream warnings was before the trial court. Also at the close of the hearing, appellant's counsel asserted the recorded statement was inadmissible under article 38.22, section 3 because the voices on the recording were not identified, but he then presented a second argument:

> And my next approach . . . is I'm contending this is a two-step interview. . . . And once they got him to say what they wanted him to say, they took him in and videoed him and gave his Miranda warning and he told the story again. And I'm suggesting under the existing case law, that's illegal and the statement should be suppressed.

The trial court suppressed the unrecorded statements but not the video statement.

Terms such as "two-step questioning," "two-step interrogation technique," and "two-step question first, warn later" all refer to the practice of obtaining a confession and then giving *Miranda* warnings midstream during an interview of a suspect. *See,*

---

[7] We note that the Court of Criminal Appeals has twice addressed in unprecedential, unpublished opinions whether raising the issue of voluntariness preserves the issue of whether a two-step interrogation technique was used in a deliberate, calculated way to undermine *Miranda* protections. *See Hunt v. State*, No. PD-0152-12, 2013 WL 3282973, at *4-5 (Tex. Crim. App. June 26, 2013) (not designated for publication) (holding raising the issue of voluntariness in the context of midstream warnings preserved complaint when, among other things, trial court found "second confession [was] not so tainted as to make it inadmissible" and thus trial court "clearly" had notice of appellant's *Seibert* complaint); *Batiste v. State*, No. AP-76,600, 2013 WL 2424134, at *16 (Tex. Crim. App. June 5, 2013) (not designated for publication) (holding that objection to "voluntariness" of defendant's statement did not preserve error as to two-step interview when appellant did not reference *Seibert*, *Carter*, "two-step questioning," "question first, warn later" or any other issues that might raise an issue under *Seibert* and the trial court's findings of fact and conclusions of law were directed only to general voluntariness). The facts of this case are closer to *Hunt* because appellant raised the issue of voluntariness in his first suppression motion and, as discussed below, objected to the officers' purported "two-step interview" at the hearing and the trial court's findings are directed toward the *Seibert* challenge.

11

*e.g., Carter*, 309 S.W.3d at 37 (referencing "two-step interrogation technique," "two-step strategy," and "two-step, 'question first, warn later' strategy" as potential violations of a suspect's *Miranda* protections). As set forth above, this interrogation technique is improper when employed in a deliberate, calculated way to undermine *Miranda* warnings, absent curative measures. *Id*. at 37-38. We conclude appellant's references to "two-step interview" and officers' Mirandizing appellant only after "they got him to say what they wanted him to say" sufficiently apprised the trial court of appellant's objection that police violated his *Miranda* protections by employing an improper two-step interrogation technique.[8]

Moreover, the trial court's findings are directed toward the issues relevant to a *Seibert* challenge. The trial court found appellant was Mirandized before his original interrogation, there was no evidence the police deliberately employed a two-step interrogation process in order to circumvent the protections of *Miranda*, and curative measures were taken by the officers.[9] *See Carter,* 309 S.W.3d at 37-38.

We conclude appellant's objection was clear enough for the trial court to understand the *Seibert* objection because appellant raised the issue of voluntariness in his first suppression motion and objected at the hearing to the officers' purported "two-step interview" and the trial court's findings were directed toward the *Seibert* challenge. Accordingly, appellant preserved the issue for our review.

## II. No evidence that officers read appellant his *Miranda* warnings before appellant made off-camera incriminating statements

The State, as the proponent of the evidence of appellant's confession, bears the

---

[8] We find the State's complaint that this objection was not raised until "closing argument at the suppression hearing" to be inconsequential. At that point in the hearing, the State could have requested to put on more evidence regarding this issue, but it did not do so.

[9] We acknowledge that the trial court rendered its findings on remand; however, it made no finding that it had not been aware of appellant's *Seibert* challenge at the time of the suppression hearing.

burden of establishing its admissibility. *See Martinez*, 272 S.W.3d at 623 (citing Tex. R. Evid. 104(a), *De la Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008), and *Cofield v. State*, 891 S.W.2d 952, 954 (Tex. Crim. App. 1994)). It is also the State's burden to establish a valid waiver of *Miranda* rights by a preponderance of the evidence. *See id.* at 619 n.10; *see also Seibert*, 542 U.S. at 608 n.1 ("The prosecution bears the burden of proving, at least by a preponderance of the evidence, the *Miranda* waiver.").

The trial court made the following findings relevant to this issue:

- Detective Bolton credibly stated that he gave the defendant his legal warnings, and that the defendant waived his rights prior to giving the statements, all of which is reflected on the video.

- Bolton credibly testified that his partner, Investigator Padilla, had interviewed the defendant prior to the formal statement and that Bolton had monitored the interview.

- Bolton credibly testified that Padilla had given the defendant his legal warnings prior to questioning him.

- [A]ny statements indicating that Padilla had not given the defendant his legal warnings prior to questioning him are not credible.

- [T]he defendant was not credible when he testified during the suppression hearing that the officers never read him his legal warnings when they first started talking to him.

- [T]he defendant was Mirandized prior to his original interrogation.

We shall analyze these findings to determine whether they are supported by the record.

**Warnings by Bolton**. Bolton did not testify that he Mirandized appellant before appellant made off-camera incriminating statements. On the video, Bolton stated, "I'm going to read your rights to you like I did a little earlier." However, he did not testify or otherwise indicate on the video that he had done so before appellant confessed off-

13

camera. In fact, he testified that appellant waived his *Miranda* rights "at the end," but he did not explain what he meant by that phrase. We conclude the trial court's finding that "Bolton credibly stated that he gave the defendant his legal warnings" is supported by the record. But the finding that "Bolton credibly stated that . . . the defendant waived his rights ***prior to giving the statements***, all of which is reflected on the video" is not supported by the record (emphasis added).

**Evans' and Padilla's Interview of Appellant**. Bolton testified that he ***did not*** monitor Evans' or Padilla's interview of appellant. As set forth above, the following exchange occurred upon defense counsel's cross-examination of Bolton:

[Defense counsel:] . . . [W]here was [appellant] located when you saw Evans and Padilla talking to him?

[Bolton:] . . . I was not present when . . . Padilla talked to [appellant]. I was in an interview room talking to . . . Martinez. I was conducting an interview there while . . . Padilla was speaking to [appellant]. So, I was not present when he spoke to him, you know. . . .

[Defense counsel:] . . . [Y]ou stayed in the little anteroom listening to somebody talking to [appellant] for a while. How long did you stay in there and listen to that?

[Bolton:] . . . I didn't watch that interview. While . . . Padilla or . . . Evans, either one, was interviewing [appellant] . . . I was interviewing . . . Martinez.

[Defense counsel:] Okay. So what . . . they said and what they did, you don't know other than what they told you he was saying.

[Bolton:] Yes, sir. . . .

Accordingly, the trial court's finding that "Bolton credibly testified that . . . Padilla . . . had interviewed the defendant prior to the formal statement and that Bolton had monitored the interview" is not supported by the record.

14

Bolton had testified, however, as follows: "I was in the monitoring room. When [Evans and Padilla] entered the room, you know, they read [appellant]—and when they interviewed . . . Martinez, they also read him his legal warnings." This testimony is unclear and inconsistent with Bolton's later testimony clarifying that he did not monitor appellant's interview.

The trial court is the sole factfinder at a suppression hearing and may believe or disbelieve some or all of a witness's testimony. *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). However, the trial court's account of the evidence must be plausible in light of the record viewed in its entirety and must be reasonably supported by the evidence. *See id.* at 878-80 (concluding, after considering facts "taken as a whole" and reasonable inferences therefrom that the State carried its burden to show warrantless arrest was supported by probable cause); *see also Miller v. State*, 393 S.W.3d 255, 263 (Tex. Crim. App. 2012) ("[A]ny trial-court findings inconsistent with . . . conclusive evidence may be disregarded as unsupported by the record, even when that record is viewed in a light most favorable to the trial court's ruling."); *Carmouche v. State*, 10 S.W.3d 323, 332-33 (Tex. Crim. App. 2000) (concluding trial court's finding that defendant voluntarily consented to search was not supported by record when "indisputable" video evidence contradicted essential portions of ranger's testimony).

Although Bolton initially stated that Evans and Padilla Mirandized appellant, Bolton clarified he was ***not present*** when Evans and Padilla interviewed appellant. Bolton further testified he was not present when appellant was arrested at 2:00 p.m. Bolton had been asked to assist in the interrogation around 5:15 p.m. and could "really just testify to anything that happened after 5:15." Bolton testified he interviewed another suspect and did not begin interviewing appellant until 10:00 or 10:30 p.m. Thus, he was not aware of what transpired with appellant from 2:00 p.m. until he started his interview

15

at 10:00 or 10:30 p.m. Reviewing the entirety of Bolton's testimony, we conclude the trial court's findings that "Bolton credibly testified that Padilla had given the defendant his legal warnings prior to questioning him" and appellant "was Mirandized prior to his original interrogation" are not plausible or reasonably supported by the evidence.

**Appellant's Testimony**. With regard to the other two findings, that "any statements indicating that Padilla had not given the defendant his legal warnings prior to questioning him are not credible"[10] and appellant "was not credible when he testified during the suppression hearing that the officers never read him his legal warnings when they first started talking to him," the trial court was allowed to disbelieve appellant's testimony on these points. *See Amador*, 275 S.W.3d at 878. However, the State was still required to meet its burden to show appellant received *Miranda* warnings before making the off-camera incriminating statements, which it failed to do. *See Martinez*, 272 S.W.3d at 619 n.10.

We conclude the trial court's finding that appellant received his *Miranda* warnings before making incriminating statements is not supported by the record. To the contrary, the State failed to present evidence that appellant received such warnings. Therefore, we must address whether the State established that it did not employ a two-step interrogation technique in a deliberate way to undermine appellant's *Miranda* protections.

### III. No evidence that the two-step interrogation technique was not deliberately employed

Courts should determine "whether the evidence shows that [the interrogating officer] deliberately employed a two-step 'question-first, warn later' interrogation technique to circumvent [the] appellant's *Miranda* protections." *Carter*, 309 S.W.3d at 38; *Ervin v. State*, 333 S.W.3d 187, 213 (Tex. App.—Houston [1st Dist.] 2010, pet.

---

[10] The only evidence of this was presented through appellant's testimony.

16

ref'd). Because the "question of whether the interrogating officer deliberately withheld *Miranda* warnings will invariably turn on the credibility of the officer's testimony in light of the totality of the circumstances surrounding the interrogation," a factual finding regarding the officer's credibility is entitled to deference on appeal and is reviewed only for clear error.[11] *Carter*, 309 S.W.3d at 39; *Ervin*, 333 S.W.3d at 213.

The following findings by the trial court are relevant to this issue:

- [T]he defendant was not credible when he claimed that he repeatedly told the officers that he did not want to talk to them.

- Bolton credibly testified that the delay in taking a formal interview of the defendant was due to an effort to build rapport with the defendant.

- [E]ven if the defendant had not been Mirandized prior to his original interrogation, there was no evidence that the police deliberately employed a two-step interrogation process in order to circumvent the protections of Miranda and [there was evidence] that the police did not deliberately employ such a two-step interrogation process. Rather, any delay in the administration of *Miranda* warnings was due to an effort to build rapport with the defendant than to intentionally circumvent the protections of *Miranda*.

We may set aside these findings only if they are clearly erroneous. *See Carter*, 309 S.W.3d at 39-41; *McCulley v. State*, 352 S.W.3d 107, 118 (Tex. App.—Fort Worth 2011, pet. ref'd).

In *Martinez*, the Court of Criminal Appeals held that the State has the burden of proving that a two-step interrogation technique was not deliberately employed in light

---

[11] When the two-step questioning tactic is not deliberately employed, "a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings." *See Oregon v. Elstad*, 470 U.S. 298, 318 (1985); *see also Carter*, 309 S.W.3d at 36; *Ervin*, 333 S.W.3d at 213. In this situation, when the first statement is unwarned but not coerced, "the admissibility of any subsequent statement should turn . . . solely on whether it is knowingly and voluntarily made." *Elstad*, 470 U.S. at 309; *see also Carter*, 309 S.W.3d at 32; *Ervin*, 333 S.W.3d at 213. "Unless a deliberate two-step strategy is employed, *Elstad* applies." *Carter*, 309 S.W.3d at 37; *see also Ervin*, 333 S.W.3d at 213.

of the State's burden to show a confession is admissible. 272 S.W.3d at 623-24. No other Texas cases have addressed this issue directly.[12] In *Martinez*, police officers questioned the defendant about a robbery and murder before the defendant was given *Miranda* warnings. *Id*. at 618. Thereafter, a polygraph test was administered to the defendant, which took three to four hours. *Id*. The questions asked during the polygraph test were not in the record. *Id*. After the polygraph test, an officer informed the defendant that he had failed the test. *Id*. Appellant was then taken to municipal court, where a magistrate read him his *Miranda* warnings. *Id*. Upon his return to the police station, an officer again read appellant his *Miranda* warnings, and appellant was again questioned about the robbery and murder. *Id*. Appellant then gave incriminating statements on videotape. *Id*. The State argued appellant had the burden of producing an adequate record regarding what questions were asked during the polygraph test and any unwarned conversations. *Id*. at 623.

> The Court of Criminal Appeals noted,
>
> When the officers initially questioned [the defendant] at the police station without giving him *Miranda* warnings, they violated [the defendant's] constitutional rights. At the suppression hearing, the state failed to provide the polygrapher's name, the questions used during the polygraph examination, or the content of the initial interrogation of [the defendant], all of which are under the exclusive control of the state.

*Id*. at 623-24.

In holding that appellant's videotaped statement was inadmissible, the court further noted,

---

[12] Other Texas courts of appeals have noted that the burden of showing admissibility is on the State. *See, e.g., Ervin*, 333 S.W.3d at 235-36. Other jurisdictions have imposed this burden on the government as consistent with the government's burden to prove admissibility of a confession before it may come into evidence. *See, e.g., U.S. v. Capers*, 627 F.3d 470, 479 (2d Cir. 2010); *U.S. v. Stewart*, 536 F.3d 714, 719 (7th Cir. 2008); *U.S. v. Ollie*, 442 F.3d 1135, 1142-43 (8th Cir. 2006); *Ross v. State*, 45 So. 3d 403, 427 (Fla. 2010).

18

> Here, [the defendant] was in custody for the purposes of *Miranda*; he gave both statements to law-enforcement officials after his formal arrest pursuant to an arrest warrant, and both statements were given at a police station. This indicates that the absence of *Miranda* warnings at the beginning of the interrogation process was not a mistake based on the interrogating officers' mistaken belief that [the defendant] was not in custody, but rather a conscious choice.

*Id.* at 624.

In his concurrence, Judge Price stated, "I do not know whether [the State's] burden should extend to disproving circumstances that precede the *Miranda* warnings that might suffice, in contemplation of *Seibert*, to call the efficacy of those warnings into doubt." *Id.* at 628 (Price, J., concurring). But he noted without regard to which party carried the burden, the defendant "prove[d] circumstances that would impugn the efficacy of otherwise valid *Miranda* warnings." *Id.* Despite these statements and other statements that appear to conflict with the analysis in the opinion authored by Judge Johnson, Judge Price joined Judge Johnson's opinion, making it a five-judge majority opinion of the court. *See id.* at 617 (noting that Judge Price joins Judge Johnson's opinion); *Id.* at 630 (Price, J., concurring) (stating that Judge Price joins Judge Johnson's opinion).

Justice Hervey dissented, and three justices joined her dissent. She stated she would require the defendant to present a sufficient record showing a police officer deliberately employed the two-step questioning tactic. *Id.* at 631 (Hervey, J., dissenting). She cited cases that stand for the proposition that it is the defendant's burden to prove his statements were the result of custodial interrogation and then the burden shifts to the State to defeat the defendant's claim. *Id.* at 643. Here, it is undisputed that appellant was in custody when he made his statements. He had been arrested pursuant to a valid arrest warrant.

19

As in *Martinez*, the record in this case also is incomplete.[13] Neither Evans nor Padilla testified. There is no evidence of what transpired before Bolton began his interrogation at 10 or 10:30 p.m. Appellant confessed, and the officer "came out of the video room . . . and told [the other officers] that [appellant] had confessed" and "we need to get it on video." A few minutes later, at "about midnight," Bolton reentered the interrogation room, started the recording, and read appellant his *Miranda* warnings. Although Bolton stated on the video that he read appellant his *Miranda* warnings "a little earlier," no evidence shows when this occurred and thus whether it occurred before appellant made any incriminating statements off-camera. On the video, appellant repeats earlier unrecorded statements, which are not in the record, but Bolton refers to them numerous times during the video recording.[14]

The State presented no evidence that the two-step interrogation was not deliberately employed to undermine the *Miranda* warnings. The trial court's finding that "there was no evidence that the police deliberately employed a two-step interrogation process in order to circumvent the protections of Miranda" is not relevant because it shifts the burden to the appellant to prove the two-step interrogation was deliberately employed, when the State was required to show that it was not. *See id*. at 623-24.

Although appellant presented some evidence that the interrogation technique was deliberately employed to undermine the *Miranda* warnings, the trial court was entitled to discredit appellant's testimony. *See Amador*, 275 S.W.3d at 878. However, the State had the burden to present evidence that its interrogation technique was not deliberately employed to undermine the *Miranda* warnings. *See Martinez*, 272 S.W.3d at 623-24. As

---

[13] The *Martinez* court held that an incomplete record does not preclude an appellate court from analyzing whether a two-step questioning tactic was deliberately employed because it is the State's burden to show the confession is admissible. *See Martinez*, 272 S.W.3d at 623.

[14] For example, after administering *Miranda* warnings, Bolton began the video interrogation by stating, "Tell me what we talked about earlier."

in *Martinez*, appellant was in custody for *Miranda* purposes when he was being interrogated. He gave both statements to law-enforcement officers after he had been arrested pursuant to a valid arrest warrant. Both statements were given at a police station. As set forth above, the State did not show that officers read appellant his *Miranda* warnings before the first confession was obtained. This indicates that the absence of *Miranda* warnings before the beginning of the interrogation process was not a mistake but rather a conscious choice. *Id*. at 624.

The trial court found, however, that "the police did not deliberately employ [an illegal] two-step interrogation process. Rather, any delay in the administration of *Miranda* warnings was due to an effort to build rapport with the defendant rather than to intentionally circumvent the protections of *Miranda*." The record indicates, to the contrary, that Bolton testified he did not ***record*** the entire interview of appellant because he wanted "to build rapport." He did not testify that he or the other officers ***delayed administering*** **Miranda** ***warnings*** to build rapport.[15]

The State cites two cases from jurisdictions outside of Texas in support of its argument that a delay in administering *Miranda* warnings to build rapport is not a deliberate attempt to circumvent *Miranda* protections. The first case, an unpublished opinion, is distinguishable because the officer there testified that during the course of the conversation he realized he had forgotten to Mirandize the suspect: "The conversation began . . . a rapport was built, and it wasn't until some facts started to come out that I realized I had forgotten to *Miranda*. That's why I stopped the interview then, made the *Miranda* advisement, and made sure he waived before we continued."

---

[15] Defense counsel asked Bolton, "And if it comes to a point **whether the Miranda warnings were read or not**, y'all talked to him for almost eight hours and then all the [sic] sudden decide to start audio. Why don't you audio the whole thing?" (Emphasis added.)

Bolton responded, "[W]e just don't do it. And it's just a decision that we made that— sometimes it's like hours, you know, just to get—to build rapport with the individual. You know, we talk to them about a number of things, about family."

*People v. Delatorre*, No. B230591, 2012 WL 909659, at *2 (Cal. Ct. App. Mar. 19, 2012). Forgetfulness is not deliberateness. *See Carter*, 309 S.W.3d at 39 (articulating standard as "whether interrogating officer deliberately withheld *Miranda* warnings"). Moreover, the court of appeals in *Delatorre* held that the defendant had waived his complaint that "his admissions had been tainted by the delayed *Miranda* warning" because at trial, the defendant only asked the trial court to exclude his prewaiver statements. *Id.* at *4. Thus, the *Delatorre* court did not need to address whether the police officer's delay in administering the *Miranda* warnings was deliberate. As set forth above, appellant did not waive that issue in this case.

The second case also is distinguishable. The court held that officers' prewaiver "initial background interview" of a suspect for 20 minutes was not a deliberate attempt to undermine *Miranda*. *State v. Hughes*, 272 S.W.3d 246, 248, 254 (Mo. Ct. App. 2008). During that 20-minute conversation, officers asked the suspect various questions about his background, relationships with family members, and why he had come to the city where the crime was committed. *Id.* at 248. Importantly, before appellant confessed, officers read his *Miranda* rights to him and he signed a *Miranda* waiver form. *Id.* The officer who testified at trial identified two reasons beyond collection of background information justifying the prewaiver discussion: "(1) to determine whether the subject is under the influence of drugs or alcohol to an extent that would prevent the subject from meaningfully participating in an interrogation; and (2) to assess the subject's level of intellectual functioning, facility with the English language, and ability to read." *Id.* at 254.

In concluding that "the officers had no intent to violate *Miranda* by conducting their interrogation in the manner they chose," the court noted:

> We are not blind to the fact that an evident purpose of the officers' pre-waiver questioning of [the suspect] (beyond acquiring background information, and gauging his intellectual capacity, literacy, and lucidity)

was to build a rapport to facilitate [the] further interrogation. The officers did so by engaging [the suspect] in a discussion of various non-threatening subjects. . . . However, nothing in that pre-waiver discussion undermined, misrepresented, or otherwise rendered ineffective the *Miranda* warning [the suspect] was ultimately given, or the waiver he ultimately executed (nor did the officers intend to achieve this effect, according to the trial court's findings).

*Id*. at 255. The clear implication from this statement is that while a prewaiver attempt to build rapport by discussing subjects unrelated to the crime is permissible, taking steps during a prewaiver discussion to "undermine[], misrepresent[], or otherwise render[] ineffective the *Miranda* warning" would be a violation of *Seibert*. *See id*.

In this case, unlike the facts in *Hughes*, appellant was in custody for approximately eight hours before Bolton began questioning him and had previously been questioned by Evans and Padilla for an indeterminate amount of time. The record is silent regarding what subjects were discussed as well as to whether appellant received his *Miranda* warnings during that timeframe. Moreover, as set forth above, Bolton did not testify that the administration of *Miranda* warnings was delayed to build rapport. He merely testified that ***the recording*** was delayed for that purpose.

The State has not cited any cases holding that an officer's intentional withholding of *Miranda* warnings to build rapport is not a deliberate attempt to circumvent *Miranda* protections, nor have we found any. *See Martinez*, 272 S.W.3d at 624-25 (holding State failed to meet burden to show withholding *Miranda* warnings was not deliberate when, among other things, interrogation process at police station was lengthy and appellant did not receive *Miranda* warnings until seven hours after the initial interrogation). We conclude that the trial court's finding that the police did not deliberately employ an illegal two-step interrogation process because any delay was due to an effort to build rapport is not supported by the record. No testimony was elicited to this effect. There is no evidence that the officers did not make a conscious choice to withhold *Miranda*

23

warnings. *See Martinez*, 272 S.W.3d at 624. Accordingly, the State failed to meet its burden to show that its interrogation technique was not deliberately employed to undermine *Miranda* protections. *See id.* at 623-24.

## IV. No Evidence of Curative Measures

As set forth above, absent curative measures, the post-warning statements must be excluded. *Seibert*, 542 U.S. at 622 (Kennedy, J., concurring); *Carter*, 309 S.W.3d at 37. "Curative measures should be designed to ensure that a reasonable person in the suspect's situation would understand the import and effect of the *Miranda* warning and of the *Miranda* waiver." *Martinez*, 272 S.W.3d at 621; *see also Ervin*, 333 S.W.3d at 212-13. Curative measures allow the accused to distinguish the two contexts and appreciate that the interrogation has taken a new turn. *Martinez*, 272 S.W.3d at 621; *Ervin*, 333 S.W.3d at 213. Examples of appropriate curative measures include (1) a substantial break in time and circumstances between the unwarned statement and the *Miranda* warning; (2) explaining to the defendant that the unwarned statements, taken while in custody, are likely inadmissible; (3) informing the suspect that, although he previously gave incriminating information, he is not obligated to repeat it; (4) interrogating officers refraining from referring to the unwarned statement unless the defendant refers to it first; or (5) if the defendant does refer to the pre-*Miranda* statement, the interrogating officer stating that the defendant is not obligated to discuss the content of the first statement. *Martinez*, 272 S.W.3d at 626-27 (referring to examples in *Seibert* plurality and concurrence).

The trial court made the following findings relevant to this issue:

[C]urative measures were taken before the second confession by the following procedures: (1) there was minimal reference to the original interrogation in the defendant's recorded statement, (2) different officers conducted the two interviews, (3) a substantial amount of time elapsed between the original interrogation at 5:15 p.m. and the formal recorded

24

statement after midnight, and (4) *Miranda* warnings were again given and waived prior to the second statement, which was recorded.

Only the first two findings arguably could be considered curative measures, but neither is supported by the record. As set forth above, Bolton referred to the original confession numerous times during the recorded interview. Bolton began the video interrogation by stating, "Tell me what we talked about earlier." Bolton also stated: "Earlier you said you were out drinking with a friend. Tell me what happened." "Earlier you said the passenger door was open." "Earlier you said you ran down the street." The video interview does not reflect that appellant referred to the unrecorded statement first, and Bolton did not refrain from referring to the statement. *See Carmouche*, 10 S.W.3d at 332-33 (concluding trial court's finding was clearly erroneous when "indisputable" video evidence contradicted finding).

In any event, the proper inquiry is whether Bolton refrained from referring to the earlier statement or whether appellant referred to it first—neither occurred here. When an officer refers to the first interrogation in the second interrogation, as here, it is evidence that a continuity exists between the two interrogations. *See Martinez*, 272 S.W.3d at 625-26. To avoid a *Miranda* violation in such a circumstance, an officer may inform the defendant that any prior unMirandized statements made during a previous interrogation could not be used against him. *See id*. at 626. Here, Bolton repeatedly referred to appellant's previous statement on the video and thus treated that interrogation as a continuation of the first. *See id*. at 625-26. On the video, Bolton did not inform appellant that any unMirandized statements could not be used against him. Accordingly, the trial court's finding that Bolton's reference to the unrecorded statement was minimal and thus a curative measure is not supported by the record.

Moreover, it is undisputed that Bolton elicited the original, unrecorded confession from appellant and then recorded the statement. Thus, the trial court's finding that

25

different officers conducted the two interviews as a curative measure is not supported by the record.

The third finding—that "a substantial amount of time elapsed between the original interrogation . . . and the formal recorded statement" is not a curative measure. A curative measure would be a substantial break in time and circumstances between the unwarned statement and the *Miranda* warning. *See id.* at 626. When the presence of police personnel with the defendant is virtually uninterrupted, there is no substantial break in time and circumstances between the prewarning statement and the *Miranda* warning. *See id*. at 625. Appellant had been interviewed by Evans and Padilla for an indeterminate time period before Bolton began his interview. The only evidence of a break in time of police presence with appellant was Bolton's testimony that "after [appellant] confessed," Bolton "used the restroom and then a few minutes later . . . came back into the room" and took the recorded statement. That is not evidence that a substantial amount of time elapsed between the first and the second interrogations. Thus, the trial court's finding is not supported by the record.

The final relevant finding—that *Miranda* warnings were given and waived prior to the second statement[16]—likewise is not a curative measure. In fact, that is the pattern of an improper "question first, warn later" interrogation technique when the prior statement was unwarned. *See Seibert*, 542 U.S. at 604–05. This finding is not relevant.

No evidence was presented that curative measures were taken in this case. Thus, we conclude on this record the State did not meet its burden to present evidence that the officers did not employ a two-step interrogation technique in a deliberate, calculated way to undermine appellant's *Miranda* warnings or that the officers took curative

---

[16] We note that the trial court found the warnings were "again" given. For the reasons set forth above, we conclude the State did not present evidence of when the original warnings were given and thus whether it was before Bolton elicited the first confession.

26

measures to alleviate the purported failure to give such warnings before the original confession was obtained. Accordingly, the trial court's findings that the officers did not employ a two-step interrogation technique in a deliberate, calculated way to undermine appellant's *Miranda* warnings and that officers took curative measures are not supported by the record and are clearly erroneous. The trial court erred in admitting appellant's videotaped statement.

### V.    Admission of Statement Harmful

We must determine whether admitting appellant's videotaped statement was harmful error requiring reversal. *See* Tex. R. App. P. 44.2(a). The admission of incriminating statements made during a custodial interrogation where no proper *Miranda* warnings were given constitutes constitutional error, and this court must reverse unless we determine beyond a reasonable doubt that the error did not contribute to appellant's conviction. *See id.*; *Akins v. State*, 202 S.W.3d 879, 891-92 (Tex. App.— Fort Worth 2006, pet. ref'd.). In analyzing whether the constitutionally erroneous admission of a defendant's statement was harmless, we review whether the admission of appellant's statement contributed to the jury's verdict of guilty in this cause, regardless of whether there is evidence independent of the statement that is otherwise sufficient to sustain the jury's verdict of guilt. *McCarthy v. State*, 65 S.W.3d 47, 55 (Tex. Crim. App. 2001). If there is a reasonable likelihood that the error materially affected the jury's deliberations, then the error is not harmless beyond a reasonable doubt. *Id*.

A defendant's statement, especially a statement implicating him in the commission of the charged offense, is unlike any other evidence that can be admitted against the defendant. *Id*. at 55-56. The presence of other overwhelming evidence that was properly admitted which supports the material fact to which the inadmissible evidence was directed may be an important factor in the evaluation of harm. *Wall v. State*, 184 S.W.3d 730, 746 (Tex. Crim. App. 2006). However, a confession is likely to

27

leave an indelible impact on a jury. *McCarthy*, 65 S.W.3d at 56.

> If the jury believes that a defendant has admitted the crime, it will doubtless be tempted to rest its decision on that evidence alone, without careful consideration of the other evidence in the case. Apart, perhaps, from a videotape of the crime, one would have difficulty finding evidence more damaging to a criminal defendant's plea of innocence.

*Id*. (quoting *Arizona v. Fulminante*, 499 U.S. 279, 313 (1991) (Kennedy, J., concurring)).

Here, appellant confessed to shooting the two complainants execution-style as they sat in a car and to stealing the complainants' marijuana and cars. He also confessed that he threw the gun he used in the commission of the offenses into a bayou. The State presented evidence that corroborated the confession. A neighbor heard gun shots, left his house, and saw the two bodies and a man stumbling toward the bayou. A witness testified that he walked into a house after the shooting. The witness testified that a group of people, including appellant, was in the house, and the people were celebrating. The witness testified, "*They* said that they had shot somebody." He said "*they*" showed him a bag of marijuana. He could not remember who showed him the bag, but he "guess[ed]" it was appellant. However, he said appellant "was not really the one that was speaking that much." He said "they" told him "they" had a gun "that they threw away." He also said appellant's accomplice Martinez did most of the talking.

Another witness had gone to the house with the first witness to obtain marijuana. That witness said appellant and Martinez were there with a group of people. Appellant and Martinez were "jumpy." The second witness testified that appellant said "[t]hey killed two people because of a bag of weed." Appellant also purportedly said that "[t]hey had [the complainants'] car in their garage." Defense counsel elicited testimony from the second witness that in his earlier statement to police, he said Martinez did the talking, not appellant. No evidence was presented that appellant was the shooter other

28

than appellant's videotaped confession. Although some evidence of appellant's guilt corroborates his confession, we cannot say there is no reasonable likelihood that the State's use of appellant's statement materially affected the jury's deliberations. *See id.*

We sustain appellant's sole issue. We reverse the judgment of the trial court and remand for a new trial.[17] *See* Tex. R. App. P. 43.2(d); *McCarthy*, 65 S.W.3d at 56.


/s/    Martha Hill Jamison
Justice


Panel consists of Chief Justice Frost and Justices Christopher and Jamison (Frost, C.J., dissenting).
Publish — TEX. R. APP. P. 47.2(b).

---

[17] A motion to suppress is a specialized objection to the admissibility of evidence. *Black v State*, 362 S.W.3d 626, 633 (Tex. Crim. App. 2012). When an appellate court concludes that certain evidence is inadmissible, this is generally the law of the case. *See Howlett v. State*, 994 S.W.2d 663, 666 (Tex. Crim. App. 1999) ("[A]n appellate court's resolution of a question of law in a previous appeal of the same case will govern the disposition of the same issue when raised in a subsequent appeal."). The law of the case doctrine may apply to a motion to suppress. *See, e.g., Satterwhite v State*, 858 S.W.2d 412, 430 (Tex. Crim. App. 1993) (applying law of the case because none of the facts surrounding search had changed); *Ware v State*, 736 S.W.2d 700, 701 (Tex. Crim. App. 1987) (applying law of the case when the facts and legal issues were "virtually identical"). However, though we have concluded that the State did not meet its burden of proof on this record, nothing prevents the State from offering additional evidence in support of the admissibility of the confession on remand. *See Black*, 362 S.W.3d at 633-34; *Montalvo v State*, 846 S.W. 2d 133, 136 (Tex. App.—Austin 1993, no pet.).