

# NUMBER 13-16-00007-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

**JUAN GALLEGOS,**                                                                      **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                      **Appellee.**

## On appeal from the 148th District Court
## of Nueces County, Texas.

# MEMORANDUM OPINION
### Before Justices Contreras, Benavides, and Longoria
### Memorandum Opinion by Justice Benavides

By three issues, appellant Juan Gallegos challenges his conviction for theft. *See* TEX. PENAL CODE ANN. §§ 12.425(b), 31.03(a), (b), (e)(4)(D) (West, Westlaw through 2017 1st C.S.). Gallegos alleges: (1) the trial court incorrectly denied his motion to suppress; (2) the trial court incorrectly considered certain evidence during the punishment phase; and (3) the evidence was insufficient to support his conviction. We affirm.

## I. BACKGROUND

Gallegos was charged with theft of property in an amount less than $1,500.00, a misdemeanor which was enhanced to a state jail felony because of two prior misdemeanor theft convictions. *See id.* § 31.03(a), (b), (e)(4)(D). Gallegos additionally had two prior felony convictions, which the State used to enhance his charge to a second-degree felony. *See id.* § 12.425(b).

At trial, Frank Leaf, a loss prevention officer at Kohl's department store, testified that on March 26, 2015, he was alerted to an alarm going off near an emergency exit door in the store. As Leaf reviewed the surveillance cameras, he saw a gold Nissan sedan with its trunk ajar leaving the back area of the store near the time the emergency door's alarm was activated. Leaf also noticed that the license plate on the Nissan seemed to be obscured. Leaf testified that the emergency door was near the electronics section, and upon reviewing the surveillance video further, Leaf noticed Gallegos entered Kohl's through the front entrance. The video depicted Gallegos browsing the store, selecting items, and placing them in a shopping basket. Leaf then stated that Gallegos entered the electronics area, looked at the Samsung electronics area, appeared to make a phone call on his cell phone, and selected a Samsung television and soundbar from the display. Leaf said that Gallegos then headed towards the direction of the emergency exit door, and shortly thereafter, the door's alarm activated. Leaf noticed that Gallegos was never seen on the video leaving the front entrance. Leaf identified Gallegos in open court based on the video surveillance and testified that Gallegos did not have permission to remove items from Kohl's. Although Leaf admitted he did not see the occupants of the gold Nissan as it

2

drove away, he formed an assumption that Gallegos left in the gold Nissan based on the video and timeline of events.

Officer Andres Lopez from the Corpus Christi Police Department testified during a motion to suppress hearing and later during the trial that on March 28, 2015, he heard a call over his police radio regarding a suspicious gold sedan with obscured license plates seen at a local Wal-Mart. Officer Lopez recalled a similar report the day prior at the nearby Kohl's store, and proceeded to Kohl's when officers were unable to locate the gold sedan at Wal-Mart. Officer Lopez later located the gold Nissan sedan with duct tape covering the license plates at Kohl's. He testified he approached the vehicle and made contact with Gallegos, who was in the driver's seat. Officer Lopez felt he needed to investigate why the license plates were obscured because it could be related to ongoing criminal activity. Officer Lopez asked Gallegos to move to the patrol vehicle because Officer Lopez was concerned for his own safety, that Gallegos could leave, and that a crime was ongoing. Officer Lopez agreed that Gallegos was detained and not free to leave, but was not *Mirandized* when speaking to Officer Lopez. *See Miranda v. Arizona*, 384 U.S. 436 (1966). In the video from the interior of Officer Lopez's patrol unit, Gallegos stated that his friend was in Kohl's to steal. Gallegos also told Officer Lopez that he did not do anything and he did not want to get arrested. Officer Lopez allowed Gallegos to leave due to the lack of stolen merchandise that day.

Tyler Nunley, a loss prevention officer at Kohl's, testified as to the events from March 27 and March 28, 2015. Nunley stated that Leaf had informed him of the theft of the Samsung products the day before and he had watched the video. Nunely said on March 27, another man was observed walking around the electronics section, looking at

the high priced items, and then looking towards the emergency door. Nunley followed the man, who left without taking any items, and observed him entering a gold sedan with an obscured license plate. Nunley agreed that the man he saw on March 27 was not Gallegos, but he believed it was the same car he observed on the video from the day before. Nunley also worked on March 28, and saw the same man from the day before in the store. Nunley stated he immediately started looking for the gold Nissan sedan, and saw police approaching the vehicle. The same man Nunley saw inside the store walked out and was later arrested by police. Nunley identified Gallegos to police as the man from the March 26 video.

Corpus Christi Police Detective Gregory Shipley was assigned the theft case from March 26. He stated that patrol officers can only arrest when an offense has occurred in their presence, and that was why Officer Lopez let Gallegos leave on March 28. However, through Detective Shipley's review of the video provided by Kohl's from March 26, his knowledge of Gallegos, and Nunley's parking lot identification of Gallegos, Detective Shipley was able to determine it was Gallegos who took the Samsung television and soundbar on March 26.

Gallegos was convicted by the jury of state jail theft, and the trial court sentenced Gallegos to eight years in the Texas Department of Criminal Justice–Institutional Division based on finding the two prior felony convictions true. This appeal followed.

## II.    EVIDENCE WAS SUFFICIENT

By his third issue, which we will address first, Gallegos challenges the sufficiency of the evidence supporting his conviction.

4

**A.        Standard of Review**

When evaluating a sufficiency challenge, the reviewing court views the evidence in the light most favorable to the verdict to determine whether a rational jury could find the defendant guilty beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.); *see Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony, and a reviewing court is not to substitute its judgment as to facts for that of the jury as shown through its verdict. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). When the reviewing court is faced with a record supporting contradicting inferences, the court must presume that the jury resolved any such conflict in favor of the verdict, even if it is not explicitly stated in the record. *Id.*

A reviewing court must measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.* In order to have reversal of a conviction on a claim of insufficiency of the evidence, Gallegos must show that no rational jury could have found all the elements of the offense beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 902.

**B.      Applicable Law and Discussion**

A person commits an offense of theft if he unlawfully appropriates property with the intent to deprive the owner of property. TEX. PENAL CODE ANN. § 31.03. Appropriate means "to acquire or otherwise exercise control over property other than real property." *Id.* § 31.01 (West, Westlaw through 2017 1st C.S.). The intent to deprive an owner of his property means an intent "to withhold the property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner." *Id.* Appropriation is unlawful if it is without the owner's effective consent. *Id.*

On March 26, Gallegos was seen on the surveillance video in the electronics area selecting a Samsung television and soundbar, and shortly thereafter, the emergency door alarm near the electronics area sounded. When Leaf looked at the surveillance cameras from that area, he could see a gold Nissan sedan with obscured license plates leaving the back lot of Kohl's with what appeared to be a large box in the opened trunk area.

The following day, Nunley noticed a different man walking around the electronics area in a suspicious manner. Nunley followed the man through the surveillance cameras based on the theft the prior day and observed this man enter a gold Nissan sedan with obscured license plates. The vehicle appeared to be the same one viewed on the surveillance videos the day before.

On March 28, a suspicious vehicle with obscured license plates was reported to police seen at a nearby Wal-Mart. Officer Lopez remembered the report at Kohl's and decided to look in the area. Officer Lopez located the gold Nissan sedan, noticed the license plates were covered by duct tape, and found Gallegos in the driver's seat. When

6

approached, Gallegos told Officer Lopez that his friend was inside the Kohl's store to commit a theft. Nunley approached Officer Lopez a short time later and identified Gallegos as the man from the video on March 26 when the Samsung television and soundbar were stolen.

Based on the evidence presented by the State, a rational juror could have logically pieced together the events and connected Gallegos's presence on the surveillance video and the theft on March 26 being tied to the gold Nissan sedan that Gallegos was located in, and inferred that Gallegos was involved in the theft. We find the jury was well within its right to believe the evidence presented by the State showed the appropriate culpable mental state by Gallegos to deprive Kohl's of its property and constitute theft. We overrule Gallegos's third issue.

### III. MOTION TO SUPPRESS WAS PROPERLY DENIED

By his first issue, Gallegos argues his statements given to police at the time of his detention were inadmissible. These statements were challenged during a pre-trial motion to suppress, where the trial court denied the suppression.

### A. Standard of Review

We review a trial court's suppression ruling under a bifurcated standard. *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010). Appellate courts must view all of the evidence in the light most favorable to the ruling. *Vasquez v. State*, 453 S.W.3d 555, 564 (Tex. App.—Houston [14th Dist.] 2014, pet. granted). The trial court is the "'sole and exclusive trier of fact and judge of the credibility of the witnesses and evidence presented at a hearing on a motion to suppress, particularly when the motion is based on the voluntariness of a confession." *Delao v. State*, 235 S.W.3d 235, 238 (Tex. Crim. App.

7

2007).

Regarding findings of fact, especially when those findings are based on an evaluation of credibility and demeanor, we review the trial court's rulings under an abuse of discretion standard. *See State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006); *see also Xu v. State*, 191 S.W.3d 210, 215 (Tex. App.—San Antonio 2005, no pet.). We afford almost total deference to a trial court's determination of historical facts supported by the record. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). However, "the trial court's resolution of mixed questions of law and fact, which does not turn on an evaluation of credibility and demeanor, is reviewed *de novo.*" *Xu*, 191 S.W.3d at 215. The court of appeals is obligated to "uphold the trial court's ruling on appellant's motion to suppress if that ruling was supported by the record and was correct under any theory of law applicable to the case." *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003) (en banc).

## B.    Applicable Law

Under the Fourth Amendment, the Supreme Court has held that "a policeman who lacks probable cause but whose 'observations lead him reasonably to suspect' that a particular person has committed, is committing, or is about to commit a crime, may detain that person briefly in order to 'investigate the circumstances that provoke suspicion.'" *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975)). "Typically, this means that the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions." *Id.* "But the detainee is not obliged to respond. And, unless the detainee's answers provide the officer with probable cause to

8

arrest him, he must then be released." *Id.* "The similarly noncoercive aspect of ordinary traffic stops prompts us to hold that persons temporarily detained pursuant to such stops are not 'in custody' for the purposes of *Miranda*." *Id.*

"A police officer may stop and briefly detain a person reasonably suspected of criminal activity in the absence of probable cause to arrest the person." *Balentine v. State*, 71 S.W.3d 763, 771 (Tex. Crim. App. 2002) (citing *Terry v. Ohio*, 392 U.S. 1, 22 (1968)). "The officer may use such force as is reasonably necessary to effect the goal of the stop: investigation, maintenance of the status quo, or officer safety." *Id.* "The reasonableness of a temporary detention must be examined in terms of the totality of the circumstances" and such detention will be justified when "the detaining officer has specific articulable facts, which, taken together with rational inferences from those facts, lead him to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Id.* at 768. Although there is no length of time rule, the "reasonableness of the detention instead depends on whether the police diligently pursued a means of investigation that was likely to dispel or confirm their suspicions quickly." *Id.* at 770.

### C.    Discussion

Officer Lopez testified that he heard a call regarding a vehicle with obscured license plates, which was similar to a call he received the day prior. When Officer Lopez located the vehicle described in the Kohl's parking lot, he was alone. Officer Lopez stated he approached the vehicle and made contact with Gallegos, who was sitting in the driver's seat. Officer Lopez noticed that the Nissan sedan's license plates were covered by duct tape, making him suspicious of some type of ongoing criminal activity. Officer Lopez stated Gallegos was acting in an extremely nervous manner when they were speaking. In

9

their speaking, Gallegos told Officer Lopez that his friend "Hector" was inside Kohl's to commit a theft. Because of the suspicious circumstances, Officer Lopez also was concerned that Gallegos would attempt to leave prior to the conclusion of the investigation. Officer Lopez also stated that he believed based on his observations that criminal activity was either ongoing or about to occur. Officer Lopez articulated it was for the totality of those reasons that he asked Gallegos to step out of his vehicle and placed him in the back of his patrol unit.

Officer Lopez also testified that Gallegos was temporality detained while he conducted his investigation, but was not under arrest and was not placed in handcuffs. Officer Lopez did state that he patted Gallegos down prior to placing him in the patrol unit backseat, but did so for Officer Lopez's safety. Gallegos remained in the back of Officer Lopez's patrol unit until the other officers arrived. Gallegos did speak to Officer Lopez from the backseat of the patrol unit. Although Officer Lopez agreed that he did not read Gallegos his *Miranda* warnings, Officer Lopez also stated that Gallegos was never under arrest. *See generally Miranda*, 384 U.S. 436. Officer Lopez's actions were justified in investigating possible ongoing criminal activity. *See Berkemer*, 468 U.S. at 439. When Officer Lopez concluded his investigation and determined that Gallegos had not committed a crime in his presence, the temporary detention ended and Gallegos was released. *See id.* Therefore, we find that Officer Lopez's detention of Gallegos was temporary and never rose to the level of an arrest, which would trigger the need for *Miranda* warnings. *See id.* The trial court did not abuse its discretion in denying Gallegos's motion to suppress. We overrule Gallegos's first issue.

10

## IV. TRIAL COURT DID NOT VIOLATE GALLEGOS'S RIGHT TO CONFRONTATION

By his second issue, Gallegos alleges the trial court violated his right to confront witnesses by considering a report from the probation department that the trial court requested in determining punishment.

### A. Applicable Law and Discussion

Prior to issuing Gallegos's sentence, the trial court informed both parties that it had requested a document from the probation department to help it understand Gallegos's criminal history. The trial court also stated that the document produced was not helpful and it was going to disregard the document in determining the sentence, but it wanted the parties to be aware the document had been seen. Neither side objected to the introduction of the report.

Generally, in order to preserve error, there must be a timely and specific objection to the complained-of evidence. *Davis v. State*, 313 S.W.3d 317, 347 (Tex. Crim. App. 2010). Confrontation Clause claims are subject to this preservation requirement. *Id.* Because Gallegos did not object at trial to the admission of this document, this issue has not been preserved for our review. *See id.*; *see also* TEX. R. APP. P. 33.1(a). Gallegos's second issue is overruled.

## V. CONCLUSION

We affirm the judgment of the trial court.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
14th day of December, 2017.

11